### STATE OF CONNECTICUT *v.* FRANCISCO PEREZ
### (11315)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued November 5—decision released December 17, 1985

*Robert F. McWeeny,* with whom was *Helen Apostolidis,* for the appellant (defendant).

*John J. Bracken III,* special assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Carl Schuman,* assistant state's attorney, *Enrico Vaccaro,* former assistant state's attorney, and *Maria F. McKeon,* law student intern, for the appellee (state).

PETERS, C. J. The only issue on this appeal is the admissibility of an in-court identification of the defendant. The defendant, Francisco Perez, a/k/a Jorge Sanchez, appeals his conviction, after a jury trial, of the crimes of robbery in the first degree, in violation of General Statutes § 53a-134 (a) (4), and possession of a sawed-off shotgun, in violation of General Statutes § 53a-211 (a).[1] We find no error.

The jury could reasonably have found the following facts relevant to this appeal. On the morning of October 16, 1980, an elderly package store owner was work-

---

[1] The defendant, Francisco Perez, a/k/a Jorge Sanchez, was charged by a five count substitute information with: robbery in the first degree, in violation of General Statutes § 53a-134 (a) (4); kidnapping in the second degree, in violation of General Statutes § 53a-94; possession of a sawed-off shotgun, in violation of General Statutes § 53a-211 (a); forgery in the second degree, in violation of General Statutes § 53a-139 (a) (2); and criminal impersonation, in violation of General Statutes § 53a-130 (a) (1). The defendant pleaded guilty, during the course of his jury trial, to the last two counts. After the conclusion of the jury trial on the remaining three counts, the trial court, *Kline, J.,* granted the defendant's motion for acquittal with respect to the second count, the charge of kidnapping. The defendant's accomplice, originally being tried jointly with the defendant, had pleaded guilty to the charges against him while the jury trial was in process.

ing alone behind the counter of his store in West Hartford when two men entered. The first to enter was an Hispanic man who bought a can of beer, left, and then returned to buy a lottery ticket that he had earlier contemplated purchasing. The second was the defendant, who initially went to the the back of the store to obtain a can of beer and then came to the store counter, displayed a sawed-off shotgun, and told the store owner that he was being held up. The first man, after emptying the cash register, took the store owner to a back room, ordered him to remove his clothes, and threatened to kill him if he reappeared. In the meantime, the defendant had set off a bell by the door. The store owner, although frightened by the robbery, had the opportunity to observe the defendant across the counter, a distance of some three feet, when the defendant first threatened him, and again from the entrance to the back room when the defendant set off the bell, a distance of some twelve feet. The robbery in its entirety took between four and five minutes.

The police arrived on the scene almost immediately and obtained a description of the two robbers from the store owner. He described the defendant as a thirty year old, clean-shaven, dark-complected man with braided hair, white freckles and a scar under his right cheek. The store owner mistakenly characterized the defendant as a black man. The store owner also described the defendant's head as being rounder and larger than that of his accomplice, and described an item of the defendant's clothing, a knee-length overcoat of a light color.

Although only the store owner had observed the crime itself, three witnesses, including a police officer, saw two men walking rapidly from the scene of the crime and speeding away in an orange car. The orange car was soon discovered at a local housing project, in a parking place previously unoccupied and with its hood

hot to the touch. The car was parked in front of the apartment where the police located the defendant and his accomplice. In their search of the apartment, the police found a sawed-off shotgun, the keys to the orange car, and other evidence linking the defendant with the crime. The orange car bore the defendant's fingerprints.

About one hour after the robbery, the police brought the store owner to the housing project, telling him that the men who had robbed him might be there. There were a number of police cars in the general area. The defendant and his accomplice were standing among a group of eight to twelve people, including some policemen in plain clothes, in the vicinity of approximately one hundred people, most of whom were blacks or hispanics. Although the defendant was handcuffed behind his back, the handcuffs were at least in part concealed by a jacket draped over his shoulder. The store owner selected only two men out of the group, the defendant and his accomplice. The store owner told the police that he could positively identify the accomplice, but that he was not 100 percent sure of the identity of the defendant. Later that day, when the store owner again viewed the robbers, this time outside of a police car in front of his package store, the store owner repeated his positive identification of the accomplice and his lack of complete certainty about the defendant. The store owner was then only 70 percent certain about the defendant's identity because, in reflecting upon the robbery after it was over, the store owner was traumatized by the events of the day.[2] The next day,

---

[2] In response to questioning about his inability unconditionally to identify the defendant when he was brought back to the package store, the store owner testified: "See, I was too shook up at that time, and you know, right at that moment when they robbed me I was scared, but not as much as a half hour or an hour later, I was more scared. I was really shook up. So, I couldn't make up my mind then."

however, having considered the matter further, he had no doubts about his identification of the defendant.

At the defendant's trial, the store owner made an unqualified in-court identification of the defendant as one of the two individuals who had robbed him on October 16, 1980. The defendant moved that this in-court identification be suppressed as resulting from the pretrial identifications which the defendant characterized as suggestive and unreliable. After a hearing in the absence of the jury, the trial court denied the defendant's motion. Without expressly ruling on the alleged suggestiveness of the pretrial identifications, the court held that the in-court identification was admissible because it was independent of the earlier identifications and resulted instead from the store owner's recollection of the crime itself. The defendant took an exception to the court's ruling. This ruling is the sole basis for the defendant's appeal.

The defendant asks us to order a new trial for four reasons arising out of the contested in-court identification. The defendant claims that: (1) the pretrial show-up procedure employed by the police, first at the housing project and later at the package store, was unnecessarily suggestive; (2) the identification was not, in the totality of the circumstances, reliable; (3) the in-court identification was not adequately proven to have been independent of the unnecessarily suggestive and unreliable pretrial identification; and (4) the admission of an in-court identification tainted by an unconstitutional pretrial identification cannot be harmless error and therefore requires reversal. Because we find that the in-court identification was properly admitted, we need not address the last of these claims.[3]

[3] In resolving this case without reaching the issue of harmless error, we are not signaling any retreat from the holding of State v. Gordon, 185 Conn. 402, 419–20, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982).

We have often stated the test that governs the suppression of identification evidence derived from procedures that are challenged as violative of a defendant's constitutional rights to due process. In order to succeed on his motion to suppress, the defendant must prove (1) that the identification procedures were unnecessarily suggestive, and (2) that the resulting identification was not reliable in the totality of the circumstances. *State* v. *Hinton,* 196 Conn. 289, 292–93, 493 A.2d 837 (1985); *State* v. *Austin,* 195 Conn. 496, 499, 488 A.2d 1250 (1985); *State* v. *Myers,* 193 Conn. 457, 464, 479 A.2d 199 (1984); *State* v. *Gordon,* 185 Conn. 402, 413, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982); *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980); and see *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *Neil* v. *Biggers,* 409 U.S. 188, 199–201, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968).

The defendant's argument that the identification in this case was unnecessarily suggestive rests on his contention that what occurred at the housing project was a one-on-one show-up that could have been avoided had the police chosen to organize a line-up. Whenever someone is asked to identify a person under circumstances in which it is evident that the police believe the person to be a suspect, there is a significant risk that the ensuing identification will have resulted from the suggestiveness of the procedure rather than from the viewer's independent recollection. *State* v. *Dupree,* 196 Conn. 655, 667, 495 A.2d 691 (1985) (single photograph); *State* v. *Guertin,* 190 Conn. 440, 456, 461 A.2d 963 (1983) (hospital identification in presence of police officer); *State* v. *Maturo,* 188 Conn. 591, 595–96, 452 A.2d 642 (1982) (four persons shown to a victim who had been robbed by only three); *State* v. *Hamele,* 188 Conn. 372,

375–77, 449 A.2d 1020 (1982) (show-up at crime scene); *State* v. *Brown,* 187 Conn. 602, 614–17, 447 A.2d 734 (1982) (station house show-up); *State* v. *Gordon, supra,* 416–417 (station house show-up); *State* v. *Theriault, supra,* 371–73 (police barracks show-up). The facts of this case do not, however, demonstrate a one-on-one confrontation between victim and suspect. When the store owner first saw the defendant at the housing project, the defendant was among a group of people who resembled him in racial makeup. According to the testimony at trial, the defendant's handcuffs were not visible to the store owner, and the police officer guarding the defendant was wearing plain clothes. These facts, together with the desirability of promptly establishing either the defendant's complicity or his innocence; *Simmons* v. *United States, supra,* 384; *Bates* v. *United States,* 405 F.2d 1104, 1106 (D.C. Cir. 1968); *State* v. *Hamele, supra,* 377; *State* v. *Middleton,* 170 Conn. 601, 608, 368 A.2d 66 (1976); remove this case from the category of an unnecessarily suggestive identification procedure. The store owner's reluctance to make an immediate uncategorical identification of the defendant is not evidence of an initial misidentification but rather demonstrates the conduct of a witness exercising independence of judgment under stressful circumstances.

The conduct of the police in returning the defendant and his accomplice to the package store for a further viewing by the store owner was not, under these circumstances, independently suggestive. If the initial identification at the housing project was not suggestive, the subsequent show-up did not make it so. *State* v. *Myers, supra,* 465; *State* v. *Anderson,* 178 Conn. 287, 292, 422 A.2d 323 (1979). Nothing on this record indicates that this witness would have been more susceptible to suggestion at his store than at the housing project. Indeed, the fact that the second identification

entirely replicated the earlier one demonstrates that the store owner was "an unlikely candidate for subliminal seductions." *State* v. *Ledbetter,* 185 Conn. 607, 615, 441 A.2d 595 (1981).

In any event, even if we were to assume that the procedures employed by the police were unnecessarily suggestive, the defendant has failed to demonstrate the unreliability of the identification. "[I]n assessing the admissibility of in-court identification testimony, reliability is the 'linchpin.' *Manson* v. *Brathwaite,* [supra], 114; *State* v. *Piskorski,* 177 Conn. 677, 742, 419 A.2d 886 [cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194] (1979). Reliability is to be determined by the totality of the circumstances as emphasized in *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967), and *Neil* v. *Biggers,* [supra]." *State* v. *Gold,* 180 Conn. 619, 655, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). The store owner had ample opportunity to see the defendant at close hand; the store owner described the robber accurately apart from the darkness of his skin;[4] the store owner unhesitatingly selected the defendant from a group of people and later indicated that he was "pretty sure" of his identification; and the elapsed time of approximately one hour between the offense and the identification was reasonable.

In their totality, these circumstances would indubitably demonstrate that the in-court identification of the defendant was reliable, were it not for the shadow arguably cast by the store owner's identification of the defendant, on the day of the crime, as only 70 percent positive, while his identification of the accomplice was immediate and unconditionally positive. This court has not previously focused its attention on the reliability

---

[4] A number of witnesses testified that the defendant appeared to be more darkly complected at the time of the incident than at his trial. In addition, he no longer wore his hair in braids at the time of the trial.

of identification testimony when the identifying witness, at a relevant time in the past, was somewhat uncertain of his identification. Other courts have, however, dealt with this issue. Their unanimous holding is that such prior uncertainty goes only to the weight to be given to the proffered in-court identification, and not to its admissibility. *Smith* v. *Perini,* 723 F.2d 478, 482 (6th Cir. 1983), cert. denied, 466 U.S. 941, 104 S. Ct. 1920, 80 L. Ed. 2d 466 (1984); *United States* v. *Valenzuela,* 722 F.2d 1431, 1433 (9th Cir. 1983); *United States* v. *Saint Prix,* 672 F.2d 1077, 1084 (2d Cir.), cert. denied, 456 U.S. 992, 102 S. Ct. 2274, 73 L. Ed. 2d 1287 (1982); *State* v. *Myers,* 117 Ariz. 79, 83–85, 570 P.2d 1252 (1977), cert. denied, 435 U.S. 928, 98 S. Ct. 1498, 55 L. Ed. 2d 524 (1978); *Parks* v. *United States,* 451 A.2d 591, 604 (D.C. App. 1982), cert. denied, 461 U.S. 945, 103 S. Ct. 2123, 77 L. Ed. 2d 1303 (1983); *Ralston* v. *State,* 251 Ga. 682, 683–84, 309 S.E.2d 135 (1983); *Corbin* v. *State,* 237 Md. 486, 490, 206 A.2d 809 (1965); *Commonwealth* v. *Lacy,* 371 Mass. 363, 368–69, 358 N.E.2d 419 (1976); *Commonwealth* v. *Silver,* 499 Pa. 228, 237, 452 A.2d 1328 (1982).

These decisions are consistent with the underlying principle that admissibility of identification testimony requires a judgment about reliability that is derived from a matrix of factors in which the relative certainty of the identification is only one component. *Manson* v. *Brathwaite,* supra, 114; *Neil* v. *Biggers,* supra, 199–200; *State* v. *Hinton,* supra, 295–96. The decisions are analogous to our own holdings that a witness' partial misdescription of the person being identified goes to the weight rather than to the admissibility of the identification. *State* v. *Hinton,* supra, 297 n.6; *State* v. *Ledbetter,* supra, 612.

Notably, several of the out-of-state cases expressly deal with and admit identifications when uncertainty is to some degree attributable to the psychological

trauma associated with violent crime. *Smith* v. *Perini,* supra, 482; *Middleton* v. *United States,* 401 A.2d 109, 131–34 (D.C. App. 1979); *Williams* v. *State,* 11 Md. App. 607, 613–14, 275 A.2d 522 (1971). As these cases hold, it is understandable, in the circumstances presently before us, that a traumatic encounter with a stranger brandishing a shotgun, a mere three feet away, might have interfered temporarily with the store owner's total recall of the defendant. It is equally understandable that there might not have been an impaired recollection of the features of the accomplice, whose conduct was not as life-threatening as was the conduct of the defendant. In the totality of the relevant circumstances, the in-court identification in this case was sufficiently reliable to warrant its admission into evidence. It was for the jury, after cross-examination, to determine what weight to give to the in-court identification.

There is no error.

In this opinion the other judges concurred.