STATE OF CONNECTICUT *v.* RAYMOND D. FRAZIER
(3303)
(3304)

DUPONT, C. J., BORDEN and BIELUCH, Js.

Argued January 9—decision released April 15, 1986

*John J. Buckley,* special public defender, for the appellant (defendant in both cases).

*Robert J. Devlin, Jr.,* assistant state's attorney, with whom was *Arnold Markle,* state's attorney, for the appellee (state).

DUPONT, C. J. After a trial to a jury, the defendant was convicted of robbery in the first degree, a violation of General Statutes § 53a-134 (a) (3), assault in the second degree, a violation of General Statutes § 53a-60 (a) (2), and robbery in the third degree, a violation of General Statutes § 53a-136. The defendant was charged by two separate informations with these crimes which were committed on two different dates and which involved two separate unrelated incidents. The charges against the defendant arising from one incident were robbery in the third degree and assault in the third degree and, from the second incident, robbery in the first degree and assault in the second degree. The defendant was found guilty of all the charges except assault in the third degree.

The defendant appeals from the judgments rendered following the verdicts,[1] claiming (1) that the trial court, by its comments on the evidence, usurped the function

___

[1] The defendant appealed from the judgments rendered in both cases and the appeals were combined.

of the jury, thus denying the defendant his right to trial by jury under the sixth amendment to the federal constitution and article first, § 8 of the state constitution, (2) that the identification procedures were so suggestive as to constitute error, (3) that the defendant was prejudiced by the trial of the two cases together, (4) that the trial court should have held, as a matter of law, that a key used by the defendant was not a dangerous instrument, and (5) that the pretrial investigation, when combined with the conduct of the trial and the court's charge to the jury, denied the defendant due process.

The charges contained in the first information occurred on the morning of July 28, 1983. Phillip Scarfo, the proprietor of a store in Meriden, was robbed and assaulted while opening his store for business. Scarfo observed his assailant at close range for approximately two minutes before being struck on the head by him. He was rendered unconscious and suffered a concussion as a result of the assault. Scarfo later gave a statement regarding the incident to the police and assisted in the preparation of a composite sketch of the assailant. He also selected a picture of his assailant from a police photobook, and from a photoboard prepared by the police. The pictures selected were of the defendant. Finally, Scarfo made a positive in-court identification of the defendant during the trial.

The charges contained in the second information occurred during the afternoon of August 1, 1983. Jane Traceski was returning to her car which was parked in the lot of a Meriden grocery store. While walking to her car, Traceski observed a man, approximately twenty feet away, approaching her on the sidewalk. After she had entered her car, the man walked around the front of her car to the driver's side, came to the open window and grabbed Traceski by the throat. When Traceski tried to get out of the car through the door on the passenger side, the assailant jumped through

the open window and threatened to kill Traceski if she did not give him money. While making these threats, the assailant slashed at Traceski with a key, which she described as similar to a house key, injuring her face, ears and neck. After repeated screams by Traceski, the assailant grabbed her purse, climbed out of the car and fled the scene with the purse.

Traceski reported the incident to the Meriden police and gave them a description of her assailant. Approximately seven hours later, Traceski was contacted by the police and taken to a location where she made a positive identification of the defendant as her assailant. Traceski initially made the identification while the defendant was in the back seat of one of several police cars at the scene and reaffirmed her identification when the defendant was taken out of the car. She also made a positive in-court identification of the defendant at trial.

At trial, two witnesses to the incident made positive identifications of the defendant as the assailant and corroborated the testimony of the victim regarding the assault. One of these witnesses was contacted by the police very late that same evening and identified the defendant while he was at the police station by observing him through a window. The other witness made no pretrial identification of the defendant.

The defendant was originally charged with robbery in the first degree and assault in the second degree in the Scarfo case and robbery in the first degree and assault in the second degree in the Traceski case. The cases were tried together before a jury pursuant to a pretrial order of consolidation by the court, to which the defendant objected. At the conclusion of the state's case, the trial court granted permission for the state to file a substituted information in the Scarfo case, changing the charges from robbery in the first degree

to robbery in the third degree, a violation of General Statutes § 53a-136, and from assault in the second degree to assault in the third degree, a violation of General Statutes § 53a-61 (a) (1). The jury returned verdicts of guilty on both counts in the Traceski case. In the Scarfo case, the jury returned a verdict of guilty on the charge of robbery in the third degree and not guilty on the charge of assault in the third degree.

The defendant's first claim of error is that he was denied his right to a jury trial as a result of the trial court's comments on the evidence during its charge. The defendant argues that because of these allegedly prejudicial remarks, the trial court usurped the role of the jury as the trier of fact and presented the jury with what amounted to a directed verdict on the issue of the defendant's guilt.

A trial court is allowed to comment on the evidence as long as the court does not direct or advise the jury on how to decide the particular issue presented to it. *State* v. *Taylor,* 196 Conn. 225, 232, 492 A.2d 155 (1985); *State* v. *Storlazzi,* 191 Conn. 453, 465–66, 464 A.2d 829 (1983). The nature and extent of a trial court's permissible comments on the evidence depend on the facts involved in a particular case and the manner in which the case has been tried. *State* v. *Reid,* 193 Conn. 646, 663, 480 A.2d 463 (1984); *Bruneau* v. *Quick,* 187 Conn. 617, 627–28, 447 A.2d 742 (1982).

In this case, witnesses testified regarding two separate incidents and evidence was introduced regarding each incident, making it especially necessary for the court to comment on the evidence in order to provide the jury with a practical guide on how to apply the law to the evidence in each. *State* v. *Reid,* supra; *State* v. *Storlazzi,* supra, 467; *Shea* v. *Tousingant,* 172 Conn. 54, 60, 372 A.2d 151 (1976).

The defendant complains that the court used the phrase "of course" three times in connection with its comments on the evidence, thereby prejudicing the defendant. The words were not used in succession but were interspersed over thirteen pages of a forty-six page transcript of the charge. The first time the phrase was used, the court stated: "Now, of course the defense here says it never happened." The "it" refers to the use of a dangerous instrument during the assault on Traceski since the sentence immediately followed the court's charge on the use of a dangerous instrument. In this context, the use of the phrase did not prejudice the defendant. He claimed that he was not the perpetrator of the crime and the words "of course" are meant to mean that it naturally follows that the defendant says that he did not use a dangerous instrument. The court again used the phrase, in connection with the other incident, stating, "Of course, once again, the defense says it never happened. He wasn't there. He doesn't know whether a robbery took place or not, but it wasn't by him." These remarks immediately followed a discussion of the lack of evidence that the assault upon Scarfo had been committed by using an instrumentality other than the assailant's fist. The court's remarks highlighted the fact that the defendant denied committing the assault, and, by inference, when read in the context of the entire charge, that the state had to prove beyond a reasonable doubt that the defendant had committed the crime.

The last time the phrase was used immediately followed a discussion of the identification of the defendant by Scarfo from the police photobook. The court said: "Now, this defendant, of course, says, I wasn't there. And identification is the thing that you've got to consider." For the same reasons, as stated previously, there was nothing prejudicial about these remarks.

The other claimed prejudicial remarks relate to the evidence surrounding the identification of the defendant as the assailant in both incidents, and to the use by the court of the words "the defendant" to refer to the perpetrator of the crimes. The defendant specifically complains that the court misstated the distance between Scarfo and his assailant at the time of the crime, and commented that Scarfo was an artist who did not wear glasses, and that he immediately, "right off the bat" identified the defendant from among the pictures in the police photobook. The defendant further claims it was error for the court to tell the jury that the witnesses in both cases had identified the defendant positively and without hesitation. These comments on the evidence were permissible because the court had made it clear to the jury that they were the sole finders of the facts and it was not the court's recollection of the evidence which governed. The court also instructed the jury that they should consider the length of time available for observation of the assailant, and the lighting conditions existing at the time. Contrary to the claim of the defendant, none of the remarks were prejudicial, particularly because the court told the jury to consider all of the elements of identification to determine "the quality" of Scarfo's identification, and "anything else" that bore on the trustworthiness of the identification.

The use of the word "defendant" instead of "assailant" was innocuous. The court's remarks, when read in context, indicate that it was referring to the fact that Traceski identified the defendant as her assailant.

The defendant also claims that he was prejudiced because the court's comments on the weather at the time Traceski identified her assailant, some seven hours after the incident, were misleading and an unbalanced commentary. Apparently, the defendant thinks that

because a police officer said there was a "drizzle," the trial court could not characterize the weather as "misty." This court characterizes the defendant's claim as a picayune dissection of the charge for minutia.

The comments of the court on the evidence were particularly unobjectionable because the court told the jury at least six times that it was up to it to decide the facts. The court's discussion of the evidence from which the jury alone could find facts did not prejudice the defendant.

The defendant's second claim is that the identification procedures used in this case were so suggestive as to constitute harmful error. Our courts have repeatedly held that a defendant who attempts to suppress identification evidence has the burden of proving that the identification resulted from an unconstitutional procedure. See *State* v. *Aversa,* 197 Conn. 685, 693, 501 A.2d 370 (1985); *State* v. *Fullwood,* 193 Conn. 238, 244, 476 A.2d 550 (1984); *State* v. *McKnight,* 191 Conn. 564, 570, 469 A.2d 397 (1983); *State* v. *Anderson,* 6 Conn. App. 15, 21 n.4, 502 A.2d 446 (1986). In order to determine whether the identification procedures violated the defendant's due process rights, a case by case inquiry must be made as to (1) whether the identification procedures were unnecessarily suggestive, and, if so, (2) whether the identification was nevertheless reliable based upon an examination of the totality of the circumstances. See *State* v. *Findlay,* 198 Conn. 328, 336–37, 502 A.2d 921 (1986); *State* v. *Amarillo,* 198 Conn. 285, 291, 503 A.2d 146 (1986); *State* v. *Perez,* 198 Conn. 68, 73, 502 A.2d 368 (1985).

Scarfo made a photographic identification of the defendant whose picture was contained in a police photobook and photoboard. He also made an in-court identification of the defendant. Seven days after the robbery, Scarfo went to the Meriden police department

to assist in the preparation of a composite sketch of the suspect, and while there examined a photobook containing pictures of white males, identifying one of the pictures as that of the defendant. Except for that of the defendant, the pictures in the book were not preserved for use at trial. Shortly after being shown the pictures in the book, the victim was shown a photoboard of pictures and identified one of them as being that of the defendant. The defendant claims that without the identical photobook he can not show that the pictures in it were suggestive.[2]

Even if it is assumed, however, that the procedure with regard to the photobook was unnecessarily suggestive, the identification was sufficiently reliable based upon the totality of the circumstances. See *State* v. *Parker,* 197 Conn. 595, 599, 500 A.2d 551 (1985); *State* v. *Nelson,* 4 Conn. App. 514, 517–18, 495 A.2d 298 (1985). The reliability here is based upon several factors, including the opportunity of the victim to view his assailant at close range and in good lighting, the victim's degree of attention and level of certainty regarding his identification, and the length of time between the crime and the identification. See *State* v. *Amarillo,* supra, 293; *State* v. *Perez,* supra, 75; *State* v. *Soriano,* 2 Conn. App. 127, 131–32, 476 A.2d 633 (1984).

The defendant also claims that the photoboard identification was impermissibly suggestive because it was tainted by the prior identification of the defendant in the photobook. Although pictorial recurrence may be suggestive, in this case the identification of the defendant's picture was reliable under the totality of the circumstances. *State* v. *McKnight,* supra, 572. The victim had approximately two minutes to view his attacker,

---

[2] The preservation of the photobook is not, as a matter of law, a necessary condition precedent to a permissible in-court identification. *State* v. *McKnight,* 191 Conn. 564, 570 n.5, 469 A.2d 397 (1983).

at close range, in good lighting, was attentive, certain of the identification and the identification was made one week after the crime.

The defendant also claims that the identification procedures used in the Traceski case were impermissible. Traceski initially identified the defendant while he was seated in a police car. While this type of one-to-one confrontation between the victim of a crime and a person whom the police present as a suspect is generally considered to be presumptively suggestive; *State v. Aversa,* supra, 694; not all suggestive confrontations are constitutionally impermissible. Id., 694 n.3; *State v. Hamele,* 188 Conn. 372, 377–78, 449 A.2d 1020 (1982). The confrontation between the victim and the defendant, in this case, occurred approximately seven hours after the commission of the crime. At the time, the police had no basis to arrest the defendant and needed to make a prompt determination of his possible culpability. The confrontation, although suggestive, was not *unnecessarily* suggestive. See *State v. Hamele,* supra.

Even if, however, the confrontation between the victim and the suspect were unnecessarily suggestive, the identification made by the victim was reliable under the totality of the circumstances. *State v. Aversa,* supra, 694–95; *State v. Amarillo,* supra, 293. The victim saw the perpetrator of the crime on a clear summer afternoon, initially, some twenty feet away, and during the assault, at close range. She was able to give a detailed description of him.

The state concedes that in the Traceski case the identification of the defendant at police headquarters by a witness to the incident was unnecessarily suggestive. The identification was, nevertheless, reliable based upon the totality of the circumstances. The witness had ample opportunity to view the incident in the parking

lot and to observe the assailant for a period of up to fifteen minutes at a distance of never more than fifteen feet away. See *State* v. *Perez*, supra, 75. She was able to give a detailed description of him.

Another witness to the Traceski incident made no identification of the defendant prior to the trial. The defendant argues that her in-court identification of him violated his due process rights because of the length of time between her observation of the crime and the trial, and because the defendant was the only accused in the courtroom. The defendant cites no authority for this proposition and we know of none. The general rule regarding in-court identification of a defendant where there has been no pretrial identification is that it is admissible within the discretion of the trial court, with the weight of the identification to be determined by the jury. *United States* v. *Samalot Perez,* 767 F.2d 1, 3 (1st Cir. 1985). The trial court was correct in refusing to suppress any of the identification evidence in this case.[3]

The defendant's next claim of error is that he was prejudiced by the consolidation of the two cases for trial before a single jury.[4] The defendant argues that the consolidation substantially prejudiced him because it allowed a series of improper identifications of the defendant to be presented to the jury. The defendant also claims that the testimony of the two victims showed a propensity for violence on the part of the

---

[3] As part of this claim of error, the defendant argues that the trial court erred by failing to give a requested instruction on identification based on *United States* v. *Telfaire,* 469 F.2d 552 (D.C. Cir. 1972). A review of the charge given in this case indicates that it was clear, accurate, complete and comprehensible. While the court's charge did not follow the requested instruction, it nevertheless was adapted to the issues involved in this case and was sufficient for the guidance of the jury. See *State* v. *Davis,* 198 Conn. 680, 685–87, 504 A.2d 1372 (1986); *State* v. *McKnight,* 191 Conn. 564, 582–84, 469 A.2d 397 (1983).

[4] Pursuant to Practice Book § 829, the state's motion for consolidation of the two cases for trial was granted.

defendant and increased the likelihood of jury sympathy for the victims. Finally, the defendant claims that a reduction in the charges in the Scarfo case gave the jury the impression that the defendant "got off" as to that incident and that the jury subsequently held this against the defendant.

The decision of whether the two cases should have been tried separately or together was within the discretion of the trial court and that decision cannot be disturbed unless the trial court manifestly abused its discretion. *State* v. *Rodgers,* 198 Conn. 53, 63, 502 A.2d 360 (1985); *State* v. *Bell,* 188 Conn. 406, 410–11, 450 A.2d 356 (1982); *State* v. *King,* 187 Conn. 292, 302, 445 A.2d 901 (1982).

The evidence presented in the case was separable and straightforward, thus minimizing the possibility that the jury would be confused or that the jury would consider the evidence in a cumulative fashion. See *State* v. *King,* supra, 302. The consolidation of the two cases resulted in only one additional identification of the defendant, that of Scarfo. Furthermore, the identifications were properly admitted. Any possible jury sympathy caused by the testimony of the two victims was addressed in the trial court's charge to the jury. The court specifically instructed the jury to keep the evidence separate in considering the two cases. The jury was apparently able to distinguish between the two cases since it did not find the defendant guilty of all four of the charges. The defendant's claim that he was prejudiced by the reduction in the charges in the Scarfo case is meritless under the circumstances. See Practice Book § 624.

The evidence in these cases was not complicated, was presented in an orderly way, and consisted almost solely of eyewitness testimony. There is no indication that the jury was unable to follow the court's instruc-

tions to consider the evidence as to each incident separately and distinctly. *State* v. *Bell*, supra, 411; *State* v. *King*, supra, 301.

The defendant's fourth claim of error is that the trial court should have held, as a matter of law, that the key used by the defendant was not a dangerous instrument as defined in General Statutes § 53a-3 (7), thus eliminating a necessary element of robbery in the first degree and assault in the second degree.

Section 53a-3 (7) defines a dangerous instrument as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ." In determining whether the key constituted a dangerous instrument under the statutory definition, the actual circumstances in which the key was used must be considered. The question is whether the instrument possessed the potential for causing either death or serious physical injury under the circumstances in which it was used. See *State* v. *Scully*, 195 Conn. 668, 678, 490 A.2d 984 (1985); *State* v. *Jones*, 173 Conn. 91, 96–97, 376 A.2d 1077 (1977). Prior cases illustrate the variety of items which, under the circumstances in which they were employed, qualified as dangerous instruments under the statute. See, e.g., *State* v. *Killenger*, 193 Conn. 48, 54, 475 A.2d 276 (1984) (hammer, flashlight); *State* v. *Jones*, supra, 96 (hockey stick); *State* v. *Costa*, 95 Conn. 140, 145, 110 A. 875 (1920) (razor); *State* v. *Levine*, 39 Conn. Sup. 494, 497–98, 466 A.2d 814 (1983) (garden hose nozzle). Here, the jury was presented with evidence of the actual circumstances in which the key was used and its potential for causing serious physical injury. This evidence consisted of testimony regarding abrasions and lacerations to the victim's neck and face caused by the defendant's use of the key and medical testimony regarding the potential for serious injury to the vic-

tim's blood vessels, larynx and trachia from an attack with such a weapon. In light of this evidence, the trial court did not err in refusing to rule, as a matter of law, that the key was not a dangerous instrument.

The defendant's final claim is that the pretrial investigation procedures and the conduct of the trial, including the trial court's charge to the jury, combined to deny the defendant due process of law. The defendant asserts, without specification or substantiation, that the police methods used in this case were "patently improper" and that "[t]here were numerous objections as to evidence and failure to grant motions which, although not briefed separately, cumulatively contaminate the proceeding." The defendant fails to substantiate his claim by offering specific instances which this court may review, thus making it difficult, if not impossible, to evaluate the defendant's due process claim. See *Rodriguez* v. *Mallory Battery Co.,* 188 Conn. 145, 149, 448 A.2d 829 (1982); *State* v. *Anderson,* supra, 23 n.7. It is the appellant's burden to provide an adequate record for appellate review. See *Keating* v. *Glass Container Corporation,* 197 Conn. 428, 431, 497 A.2d 763 (1985). He has not met that burden. The defendant's broad claims have, as their target, the hope that we will conclude that he was denied due process. Random buckshots can only miss that target.

There is no error.

In this opinion the other judges concurred.