## STATE OF CONNECTICUT *v.* HAROLD KEMP
### (10727)

## STATE OF CONNECTICUT *v.* ROBERT KEMP
### (10778)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued February 5—decision released April 22, 1986

*Robin C. Murphy* and *Stephen F. Frazzini,* for the appellants (defendant in each case).

*Julia DiCocco Dewey,* assistant state's attorney, with whom were *Elpedio Vitale,* deputy assistant state's

attorney, and, on the brief, *Arnold Markle,* state's attorney, *John Durham,* assistant state's attorney, and *Richard Palombo, Jr.,* legal intern, for the appellee (state).

SANTANIELLO, J. The principal issue on these appeals is the propriety of the trial court's ruling excluding expert testimony on the potential for inaccuracy of eyewitness identification of participants in crimes. After a joint jury trial, the defendants, Harold Kemp and his brother Robert Kemp, were found guilty of four counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). Harold Kemp was given an effective sentence of five to ten years imprisonment and Robert a sentence of six to twelve years. They have separately appealed their convictions.

The jury could reasonably have found the following facts. On January 31, 1980, between 7:30 and 8 p.m., three black males entered Jimmy's Army and Navy Surplus Store in West Haven and robbed the owner and his employees at gunpoint. The first man to enter the store, later identified as the defendant Harold Kemp, was unarmed but took some leather jackets and money from the cash register. The second man, later identified as the defendant Robert Kemp, carried a shotgun and took personal property from three of the employees. A third male, David Tyson,[1] was armed with a pistol and shot the store's owner while looking for money. The entire robbery lasted approximately five to ten minutes after which the three men fled. Nine days later the defendants were arrested in Newark, New Jersey, while riding in a car with Tyson. The gun used in the shooting was found on the front seat.

---

[1] David Tyson, not a party to these appeals, pleaded guilty to robbery charges arising out of the incident.

On February 14, 1980, store employees Napolean Gunn and Barry Cohen[2] were able to identify the defendants from three photoboards shown them by police. Each board contained the same pictures arranged in different order. Gunn also identified the defendants in a pretrial lineup conducted in September, 1980. A store customer, Sandra Simpson, was able to identify Robert Kemp from a photographic display shown to her in October, 1980. All three witnesses also made identifications at trial.

The defendants claimed that this was a case of mistaken identity and presented an alibi defense. At trial, to support their argument that the state's witnesses were mistaken, they sought to call as an expert witness, Robert Buckhout, a psychologist and recognized authority on the factors which affect the accuracy of identifications. The defendants offered his testimony to impeach the reliability of the witnesses who identified them. Through Buckhout, they sought to explain to the jury that: "(1) stress, particularly stress during an incident involving violence by a weapon, may decrease the reliability of the identification; (2) memory is not a 'recording' device which accurately records an event and does not change over time; (3) the identification process is affected by post-event information learned by a witness; (4) and the level of certainty demonstrated by a person does not reflect a corresponding level of accuracy." After an evidentiary hearing was held outside the presence of the jury, the trial court refused the defendants' offer to introduce the expert testimony.

On appeal, the defendants do not directly attack the reliability of the identifications made, but claim that the trial court erred in excluding Buckhout's testimony. They argue that the court abused its discretion and vio-

---

[2] Perric Isenstein, another employee of the clothing store, also identified both defendants. He was, however, unable to testify at trial.

lated their constitutional right to call witnesses on their own behalf. We find no error.

The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. *State* v. *Girolamo,* 197 Conn. 201, 214, 496 A.2d 948 (1985); *State* v. *Biller,* 190 Conn. 594, 617, 462 A.2d 987 (1983). The court's decision "is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law. *Going* v. *Pagani,* 172 Conn. 29, 35, 372 A.2d 516 (1976)." *State* v. *Biller,* supra. Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. *State* v. *Girolamo,* supra; *State* v. *George,* 194 Conn. 361, 373, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985); *Schomer* v. *Shilepsky,* 169 Conn. 186, 191, 363 A.2d 128 (1975); *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277 (1973); *Taylor* v. *Monroe,* 43 Conn. 36, 44 (1875); see generally McCormick, Evidence (3d. Ed. 1984) § 13.

Although we have never specifically addressed the issue of the admissibility of expert testimony on the reliability of eyewitness identifications, the issue has received increased attention in other courts in recent years. Almost uniformly, state and federal courts have upheld the trial court's exercise of discretion to exclude such testimony. See, e.g., *United States* v. *Purham,* 725 F.2d 450, 454 (8th Cir. 1984); *United States* v. *Watson,* 587 F.2d 365, 368–69 (7th Cir. 1978), cert. denied sub nom. *Davis* v. *United States,* 439 U.S. 1132, 99 S. Ct. 1055, 59 L. Ed. 2d 95 (1979); *United States* v. *Amaral,* 488 F.2d 1148, 1152–53 (9th Cir. 1973); *People* v. *Lawson,* 37 Colo. App. 442, 444–45, 551 P.2d 206 (1976); *Taylor* v. *United States,* 451 A.2d 859, 866–67

(D.C. App. 1982); *Hooper* v. *State,* 476 So. 2d 1253, 1257 (Fla. 1985); *People* v. *Clark,* 124 Ill. App. 3d 14, 21–22, 463 N.E.2d 981 (1984); *Commonwealth* v. *Francis,* 390 Mass. 89, 98–102, 453 N.E.2d 1204 (1983); cf. *State* v. *Chapple,* 135 Ariz. 281, 291–92, 660 P.2d 1208 (1983); *People* v. *McDonald,* 37 Cal. 3d 351, 369–72, 690 P.2d 701, 208 Cal. Rptr. 236 (1984). Such testimony has been excluded on the grounds that the reliability of eyewitness identification is within the knowledge of jurors and expert testimony generally would not assist them in determining the question. See *Commonwealth* v. *Francis,* supra, 96–97. Such testimony is also disfavored because, as one court has stated, "it invades the province of the jury to determine what weight or effect it wishes to give to eyewitness testimony." *State* v. *Poland,* 144 Ariz. 388, 398, 698 P.2d 183 (1985).

The defendants claim that Buckhout should have been permitted to explain that a witness' expression of certainty does not make the identification more reliable, and that stress, the passage of time and intervening events diminish a witness' ability to make an accurate identification. Matters such as these, however, have generally been found to be within the realm of common experience and can be evaluated without expert assistance. *United States* v. *Amaral,* supra, 1153; *People* v. *Clark,* supra, 21; *Commonwealth* v. *Francis,* supra, 100–101; *People* v. *Brown,* 124 Misc. 2d 938, 940, 479 N.Y.S.2d 110 (1984). As the Supreme Judicial Court of Massachusetts has recently explained, "one may fairly contend that the jury would be aided by expert testimony. But [expert testimony on eyewitness identification], at least in this case and in most cases, deals with general principles, such as the fact that memories fade over time, that people under severe stress do not acquire information as well as alert persons not under stress, and that people tend unconsciously to resolve apparent inconsistencies between their mem-

ories and after-acquired facts. Obviously there are aspects of these general principles on which experts might make some contribution in particular cases. However, juries are not without a general understanding of these principles and, as the trial of this case demonstrates, they see the possible application of these principles in concrete circumstances. The jury [must] have the opportunity to assess the witnesses' credibility on the basis of what is presented at trial and not solely on general principles." *Commonwealth* v. *Francis,* supra, 101.

We are aware that in many cases the determination of guilt or innocence depends in large part on the credibility assigned to eyewitness identifications, and that in many instances identifications may be unreliable. See *United States* v. *Wade,* 388 U.S. 218, 228, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967); see generally note, "Did Your Eyes Deceive You? Expert Psychological Testimony on the Unreliability of Eyewitness Identification," 29 Stan. L. Rev. 969 (1977). This does not mean that a criminal defendant is without protection. Due process requires that such identifications be used only if they are reliable and are not the product of unnecessarily suggestive police procedures. See *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *State* v. *Perez,* 198 Conn. 68, 73, 502 A.2d 368 (1985). The weaknesses of identifications can be explored on cross-examination and during counsel's final arguments to the jury. See *United States* v. *Amaral,* supra; *People* v. *Lawson,* supra, 445; *Commonwealth* v. *Francis,* supra, 100. If the reliability of the identifications can be adequately questioned by such means and the jury is capable of understanding the reasons why they may be unreliable, the introduction of expert testimony would be "a superfluous attempt to put the gloss of expertise, like a bit of frosting, upon

inferences which lay persons were equally capable of drawing from the evidence." *State* v. *George,* supra. In this case, the defendants fully cross-examined each witness, expounded on the dangers of misidentification during argument and had the benefit of the court's instructions to the jury on the factors it should consider in determining the reliability of the identifications.[3] In conclusion, therefore, we cannot say that the trial court abused its discretion in excluding Buckhout's expert testimony.

We also reject the defendants' contention that the exclusion of the expert testimony abridged their sixth amendment right to call witnesses in their defense. This right does not grant the defendants the freedom to call any witness they choose. "In the exercise of this right, the accused, as required of the State, must comply with the established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers* v. *Mississippi,* 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); see also *State* v. *Fullwood,* 199 Conn. 281, 284, 507 A.2d 85 (1986). The defendants had ample opportunity to question the witnesses who identified them and expose any weaknesses of the identifications. The trial court properly excluded the proffered expert testimony on the basis that it would not have aided the jury in its deliberations. The court's exercise of discretion excluding the testimony did not under the circumstances violate the defendants' constitutional rights.

The defendant Harold Kemp also claims that the jury should have been instructed on the elements necessary

---

[3] In its charge to the jury, the court emphasized the critical nature of the identifications and reviewed various factors which might affect their reliability, including delay, performance under stress and inaccuracy of prior descriptions.

to find him liable as an accessory[4] under General Statutes § 53a-8.[5] He argues that he could have been found guilty of robbery in the first degree only as an accessory and that the failure of the trial court to charge the jury on that theory of liability violated his right to due process by relieving the state of its burden of proving the essential elements of the charged offense. See *State* v. *Griffin,* 175 Conn. 155, 162–63, 397 A.2d 89 (1978). Because Harold Kemp failed to request such an instruction and to object to the charge as given, we review his claim for the limited purpose of determining whether the trial court deprived him of a fundamental constitutional right and a fair trial. *State* v. *Fleming,* 198 Conn. 255, 269–70, 502 A.2d 886 (1986); *State* v. *Sinclair,* 197 Conn. 574, 580–81, 500 A.2d 539 (1985).

As noted above, the jury could reasonably have found that Harold Kemp was unarmed at the time of the robbery and that he took money and leather goods from the store while his brother robbed the employees with a shotgun and Tyson shot the owner with a pistol. Harold Kemp's argument that he was entitled to a charge on accessorial liability is premised on the contention that he could not have been convicted as a principal to robbery in the first degree under General Statutes § 53a-134 (a) (2) because he did not have a gun.

---

[4] "[T]here is no practical significance in being labeled an 'accessory' or a 'principal' for the purpose of determining criminal responsibility." *State* v. *Harris,* 198 Conn. 158, 164, 502 A.2d 880 (1985). The terms refer to the alternate means by which one substantive crime may be committed. *State* v. *Baker,* 195 Conn. 598, 608, 489 A.2d 1041 (1985).

[5] General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

The plain language of § 53a-134 (a), however, vitiates his claim. Under the statute, a person "is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, *he or another participant in the crime* . . . (2) is armed with a deadly weapon . . . ." (Emphasis added.) The mere fact that Harold Kemp was not armed with a deadly weapon did not prevent the jury from finding him criminally responsible as a principal to the crime when it was apparent that his accomplices were so armed. Thus, contrary to his assertion, Harold Kemp's conviction did not rest on the theory that he was an accessory and therefore the trial court did not deny him the right to due process and a fair trial by failing to instruct the jury on the elements of accessorial liability under General Statutes § 53a-8.

There is no error in each case.

In this opinion the other judges concurred.