## STATE OF CONNECTICUT *v.* JOHN JOSEPH ELLIOTT (3219)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued June 6—decision released August 19, 1986

*Francis T. Mandanici,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Edward J. Caldwell,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. After a trial to a jury, the defendant was convicted of two counts of robbery in the first degree, in violation of General Statutes § 53a-134 (a) (4), and two counts of unlawful restraint in the first degree, in violation of General Statutes § 53a-95 (a). The defendant appeals from the judgment rendered, claiming error (1) in the trial court's denial of his motion to suppress identification evidence, (2) in the exclusion of testimony by an expert witness concerning eyewitness identification, (3) in the failure to instruct the jury on the dangers of misidentification, (4) in the court's allegedly imposing, sua sponte, an increased sentence on the defendant three days after giving him a legal sentence, (5) in the denial of the defendant's motion for a mistrial filed in response to the state's alleged suppression of exculpatory evidence, and (6) in the allegedly ineffective assistance rendered at trial by defense counsel.[1]

The jury could have reasonably found certain relevant facts based upon the evidence presented. A young adult woman returned to her home and, as she drove

---

[1] The defendant was granted permission to file his own supplemental brief pro se. The issues as stated in his brief are (1) whether he was deprived of a fair trial and due process because of the state's failure to disclose allegedly exculpatory material, (2) whether the trial court abused its discretion by offering him a continuance instead of granting his motion for a mistrial, and (3) whether he was denied effective assistance of counsel.

her car into the driveway, she saw an unidentified male standing near a car. As she exited her car, the male produced a gun and forcibly led her into her house.

Once inside the house, the assailant tied the woman's hands behind her back and left her on the bed in her room. The assailant then searched her room, taking her jewelry box and some money in the process. The assailant next led her through other parts of the house, which he had examined prior to her arrival, in a further search for valuables. He returned to his car, taking the victim with him, in order to deposit the stolen merchandise. He then returned to the house, went upstairs to the master bedroom and forced her to lie face down on the bed. The assailant tied her up again, including handcuffing her hand to her foot. Throughout this time, she was able to observe her assailant several times at extremely close range.

As he was searching the bedroom, the victim's mother returned home. As she was looking through the house for her daughter, the assailant pointed the gun at her and forcibly took her upstairs to the same room where he had left her daughter. He also forced her to lie face down on the bed next to her daughter while he tied her up. The assailant then searched the room for valuables, asking the victims several questions in the process. Although they were tied up, both victims were able to observe their assailant during this time at close range and in good lighting conditions. After completing his search for valuables, the assailant left the premises. After freeing herself, the mother reported the incident to the police.

During the course of the police investigation, the mother viewed several photographic arrays containing pictures of possible suspects. Approximately four months later, she selected a photograph of the defendant as her assailant from a photographic array of eight

black and white photos. She also made an in-court identification of the defendant at trial. Although the daughter selected several photographs which "looked like" her assailant, she was unable to make a positive photographic identification of the defendant. She was, however, able to make an in-court identification of the defendant.

The defendant's first claim of error is that the trial court erred in denying his motion to suppress the identification evidence. The defendant took an exception to that denial. The defendant challenges the reliability of the identifications and also claims that they were made under suggestive circumstances. Specifically, the defendant claims that the mother's identification was suggestive because the photograph she selected was the only one in the array with a white border, all the other photographs having black borders, and because it was the only one with any information on the back of the photograph. As for the in-court identification made by her daughter, the defendant claims that it was unnecessarily suggestive because it was made while the defendant was either in the courthouse or sitting at counsel table.[2]

"Our courts have repeatedly held that a defendant who attempts to suppress identification evidence has the burden of proving that the identification resulted from an unconstitutional procedure. See *State* v. *Aversa,* 197 Conn. 685, 693, 501 A.2d 370 (1985); *State* v. *Fullwood,* 193 Conn. 238, 244, 476 A.2d 550 (1984); *State* v. *McKnight,* 191 Conn. 564, 570, 469 A.2d 397 (1983); *State* v. *Anderson,* 6 Conn. App. 15, 21 n.4, 502 A.2d 446 (1986). In order to determine whether the

[2] The parties dispute the circumstances under which the daughter made her initial identification of the defendant. Although the record indicates that she recognized the defendant when she walked into the courtroom to testify on the motion to suppress, no further details regarding the conditions of her initial identification were placed on the record.

identification procedures violated the defendant's due process rights, a case by case inquiry must be made as to (1) whether the identification procedures were unnecessarily suggestive, and, if so, (2) whether the identification was nevertheless reliable based upon an examination of the totality of the circumstances. See *State* v. *Findlay,* 198 Conn. 328, 336–37, 502 A.2d 921 (1986); *State* v. *Amarillo,* 198 Conn. 285, 291, 503 A.2d 146 (1986); *State* v. *Perez,* 198 Conn. 68, 73, 502 A.2d 368 (1985)." *State* v. *Frazier,* 7 Conn. App. 27, 34, 507 A.2d 509 (1986); see also *State* v. *Vaughn,* 199 Conn. 557, 563, 508 A.2d 430 (1986); *State* v. *Wiggins,* 7 Conn. App. 95, 99, 507 A.2d 518 (1986).

A review of the record in this case indicates that the identification procedures employed by the police were not impermissibly suggestive.[3] The defendant's claim, that the mother's identification was made under suggestive circumstances because of differences in his photograph, is without merit. Differences in the size and color of the photographs presented in an array, in and of themselves, do not make the array, or the individual photographs, impermissibly suggestive. See *State* v. *Fullwood,* supra, 246–47; *State* v. *McKnight,* supra, 571; *State* v. *Davis,* 175 Conn. 250, 254, 397 A.2d 1347 (1978). Furthermore, this victim testified that she did not notice the different border on the defendant's photograph in making her identification, but only took notice of the difference when it was pointed out to her on cross-examination by defense counsel.

---

[3] Even if we were to assume that the identification procedures were impermissibly suggestive, our review of the evidence presented in this case indicates that they were nevertheless reliable under the totality of the circumstances. See *State* v. *Davis,* 198 Conn. 680, 683–84, 504 A.2d 1372 (1986); *State* v. *Perez,* 198 Conn. 68, 75, 502 A.2d 368 (1985); *State* v. *Wiggins,* 7 Conn. App. 95, 101 n.3, 507 A.2d 518 (1986); *State* v. *Frazier,* 7 Conn. App. 27, 36–37, 507 A.2d 509 (1986).

The defendant's claim that the daughter's identification of the defendant was made under suggestive circumstances is similarly unpersuasive. It is undisputed that she failed to make a pretrial identification of the defendant. Her positive identification of the defendant as her assailant came at the close of her direct testimony, and did not involve an identification procedure employed by the police. On cross-examination, she testified that she first recognized the defendant when she entered the courtroom earlier that day in order to testify on the motion to suppress identification evidence. "The general rule regarding in-court identification of a defendant where there has been no pretrial identification is that it is admissible within the discretion of the trial court, with the weight of the identification to be determined by the jury. *United States* v. *Samalot Perez,* 767 F.2d 1, 3 (1st Cir. 1985)." *State* v. *Frazier,* supra, 37; see also *State* v. *Smith,* 200 Conn. 465, 469, 512 A.2d 189 (1986). The trial court was correct in denying the defendant's motion to suppress the identification evidence in this case.

The defendant's second claim of error is that the trial court erred in refusing to admit into evidence the testimony of an expert witness concerning eyewitness identification. At trial, the defendant sought to introduce the expert testimony in order to illustrate the danger of misidentification associated with eyewitness identification. The defendant argues that the testimony should have been allowed in order to balance what the defendant claims was the state's bolstering of the victims' identifications. The defendant argues that because the state introduced evidence that the victims were an artist and a teacher, respectively, this elevated their testimony to that of "quasi-experts" and, therefore, in the totality of the circumstances, the expert's testimony on the dangers of misidentification should have been allowed.

As a general rule, the test for the admissibility of expert testimony is whether the witness offered as an expert has any particular knowledge or experience which renders the opinion founded on such knowledge or experience an aid to the court or the jury in determining the question in issue. See *State* v. *Palmer*, 196 Conn. 157, 166, 491 A.2d 1075 (1985); *State* v. *Apostle*, 8 Conn. App. 216, 232, 512 A.2d 947 (1986). In *State* v. *Kemp*, 199 Conn. 473, 474–75, 507 A.2d 1378 (1986), our Supreme Court addressed the issue of whether the trial court erred in excluding expert testimony on the potential for inaccuracy in eyewitness identification of criminal participants. In reviewing the trial court's decision, the Supreme Court stated that "[t]he trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. *State* v. *Girolamo*, 197 Conn. 201, 214, 496 A.2d 948 (1985); *State* v. *Biller*, 190 Conn. 594, 617, 462 A.2d 987 (1983). The court's 'decision is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law. *Going* v. *Pagani*, 172 Conn. 29, 35, 372 A.2d 516 (1976).' *State* v. *Biller*, supra." (Brackets in original.) *State* v. *Kemp*, supra, 476.

In this case, the trial court did not abuse its discretion in excluding the expert testimony. The reliability of eyewitness identifications is within the common knowledge of the average person and the trial court correctly concluded that such testimony would not materially assist the jury in resolving the issue. See *State* v. *Kemp*, supra, 476–77. The jury was in a position to evaluate the identification evidence presented in the case without the assistance of expert testimony. Id., 478; see also *State* v. *Apostle*, supra; *Commonwealth* v. *Francis*, 390 Mass. 89, 98–102, 453 N.E.2d 1204 (1983).

The defendant's third claim of error is that the trial court erred in not fully instructing the jury on the dangers of misidentification. Specifically, the defendant claims that the trial court erred in not giving a jury instruction based on *United States* v. *Telfaire,* 469 F.2d 552 (D.C. Cir. 1972).

Although such an instruction may be given in an appropriate case; see *State* v. *Harden,* 175 Conn. 315, 322, 398 A.2d 1169 (1978); it is not reversible error for a trial court to refuse to give a *Telfaire* instruction where the conviction of the defendant did not turn upon the testimony of eyewitnesses who were uncertain, unclear or inconsistent. *State* v. *Davis,* 198 Conn. 680, 685, 504 A.2d 1372 (1986). Our review of the charge to the jury on this issue, when examined as a whole, indicates that it was clear, accurate, complete and comprehensive. See *State* v. *Harrell,* 199 Conn. 255, 268–71, 506 A.2d 1041 (1986); *State* v. *Frazier,* supra, 37 n.3. The charge fairly and adequately presented the issue to the jury so that no injustice was done to either party in the case. See *State* v. *Davis,* supra, 686; *State* v. *McKnight,* supra, 583. The trial court was not required to charge the jury in the identical language requested by the defendant, as long as its instructions were adopted to the issues involved in the case and were sufficient for the guidance of the jury. See *State* v. *Harrell,* supra, 269; *State* v. *Frazier,* supra.

The defendant's fourth claim of error is that the trial court erred in allegedly imposing, sua sponte, an increased sentence on the defendant three days after giving him his original sentence. At a sentencing hearing held on April 13, 1984, the trial court sentenced the defendant to an effective sentence of not less than ten nor more than fifty years imprisonment, to be served consecutive to a term of imprisonment the defendant was serving in New York. On April 16, 1984, the trial court had the defendant returned to the court

in order to clear up what the court characterized as a "misconception" in the defendant's sentence. The court then proceeded to sentence the defendant to a total effective sentence of not less than twenty-five nor more than fifty years.

On appeal, the defendant argues that the original sentence imposed on April 13, 1984, was a legal sentence and that the trial court had no jurisdiction to recall him to court and impose a new sentence. The defendant claims that because the original sentence was a legal one, the trial court could not correct it under Practice Book § 935.[4] The state does not dispute that the original sentence was legal.

"Practice Book § 935 provides that the judicial authority may correct an illegal sentence at any time. The illegality of the sentence is a necessary prerequisite to the court's correction of that sentence pursuant to § 935. *State* v. *Davis,* 190 Conn. 327, 335, 461 A.2d 947, cert. denied, 464 U.S. 938, 104 S. Ct. 350, 78 L. Ed. 2d 315 (1983)." *State* v. *Gaskin,* 7 Conn. App. 131, 133, 508 A.2d 40 (1986). In this case, the sentence originally given by the trial court was a legal sentence, even though it was a lesser sentence than the trial court intended. Thus, the trial court's subsequent increase of the defendant's sentence cannot be justified as the correction of an illegal sentence under Practice Book § 935.

As a general rule, a criminal sentence "cannot be modified by the trial court, even at the same term, if the sentence was valid and execution of it has commenced." *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962); see also *State* v. *Nardini,* 187

---

[4] Practice Book § 935 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

Conn. 109, 123, 445 A.2d 304 (1982); *State* v. *Pallotti,* 119 Conn. 70, 74, 174 A. 74 (1934); *Viel* v. *Potter,* 20 Conn. Sup. 173, 177, 129 A.2d 230 (1957). If there is no indication to the contrary in the record, it may be presumed that execution of the original sentence commenced promptly after it was imposed. See *State* v. *Heyward,* 152 Conn. 426, 428, 207 A.2d 730 (1965); *State* v. *Lenihan,* 151 Conn. 552, 555, 200 A.2d 476 (1964). The record in this case indicates that the defendant began serving his sentence on April 13, 1984, pursuant to a mittimus issued on that date.

We recognize that a trial court has very broad discretion in imposing any sentence within the statutory limits; see *State* v. *Collette,* 199 Conn. 308, 320, 507 A.2d 99 (1986); *State* v. *Huey,* 199 Conn. 121, 126, 505 A.2d 1242 (1986); and that " '[s]entencing should not be a game in which a wrong move by the judge means immunity for the prisoner.' *King* v. *United States,* 98 F.2d 291, 296 (D.C. Cir. [1938])." *State* v. *Langley,* 156 Conn. 598, 602, 244 A.2d 366 (1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712 (1969); see also *State* v. *Huey,* supra, 132 (*Healey, J.,* concurring). Under the circumstances in this case, however, we must conclude that the trial court erred in imposing an increased sentence where execution of the original legal sentence had commenced.

The defendant's next claim of error is that the trial court erred in denying his motion for a mistrial which was based upon the state's late disclosure of allegedly exculpatory information under *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and *United States* v. *Agurs,* 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). At trial, it was revealed that during the course of the police investigation, it was learned that, shortly before the incident took place, a neighbor of the victims briefly spoke with a male, who fit the description of their assailant. This information was not disclosed in

the state's response to the defendant's motion for discovery and inspection on the ground that the state's attorney who conducted the discovery did not consider the information to be of an exculpatory nature. This witness was later unable to make a positive photographic identification of the defendant. When the allegedly exculpatory material was revealed at trial, the court offered defense counsel an immediate continuance in order to investigate further whatever information the witness would be able to provide. Defense counsel declined the trial court's offer of a continuance and took an exception to the court's denial of the motion for a mistrial.

The trial court's denial of the defendant's motion for a mistrial did not constitute an abuse of discretion. "The general rule in this state is that a mistrial should be granted only when it is apparent to the court that some occurrence during the trial has so prejudiced a party that he can no longer receive a fair trial. *State* v. *Ubaldi,* 190 Conn. 559, 562, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983); *State* v. *Gooch,* 186 Conn. 17, 25, 438 A.2d 867 (1982); *State* v. *Turcio,* 178 Conn. 116, 143, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980)." *State* v. *Fleming,* 198 Conn. 255, 264, 502 A.2d 886 (1986). "In order to establish a violation under *Brady* and its progeny, this defendant has the burden of demonstrating not only that the state suppressed information that was favorable and material to him but also that it was not disclosed upon request." *State* v. *Pollitt,* 199 Conn. 399, 413, 508 A.2d 1 (1986). In this case, the defendant failed to establish that the state suppressed information favorable to him or that the failure to disclose the allegedly exculpatory information deprived him of a fair trial. No determination was made as to whether the evidence was actually exculpatory and material in nature. "Whether the tardy

disclosure of *Brady* material fairly requires a continuance or a delay in order to make effective use of such matter is essentially a factual question in each case." *State* v. *Pollitt,* supra, 414. In this case, the trial court was clearly willing to grant the defendant a continuance, which would have been proper under the circumstances in order to allow the defendant an opportunity to determine the true nature of the information. By declining the trial court's offer of a continuance and choosing instead to stand on the motion for a mistrial, the defendant effectively precluded an inquiry into whether the information was exculpatory or not. Under these circumstances, the trial court properly denied the defendant's motion for a mistrial.

The defendant's final claim is that he was denied effective assistance of counsel. He argues that his counsel should have accepted the trial court's offer of a continuance for the purpose of investigating the exculpatory information which was disclosed at trial. The defendant claims that the failure to do so constituted ineffective assistance of counsel. Our courts have repeatedly stated that all claims of ineffective assistance of counsel are more properly pursued on a petition for a new trial or on a petition for a writ of habeas corpus, rather than on direct appeal. See *State* v. *Lizzi,* 199 Conn. 462, 472, 508 A.2d 16 (1986); *State* v. *Pardo,* 199 Conn. 354, 358, 507 A.2d 461 (1986); *State* v. *Leecan,* 198 Conn. 517, 541–42, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); *State* v. *Farrar,* 7 Conn. App. 149, 163, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986).

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment as on file except that the original sentence imposed by the trial court shall be reinstated.

In this opinion the other judges concurred.