STATE OF CONNECTICUT *v.* MICHAEL FRAENZA
(4236)

STATE OF CONNECTICUT *v.* JOSE DIAZ
(4237)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued October 7—decision released December 2, 1986

*Charles B. Angelo,* for the defendants (appellants).

*Christopher Malany,* deputy assistant state's attorney, with whom on the brief, was *Gerald Eisenman,* deputy assistant state's attorney, for the appellee (state.)

SPALLONE, J. The defendants are appealing from their convictions, after a jury trial, of the crimes of

trawling at night in violation of General Statutes § 26-183 (b) (485 counts) and exceeding the trip limit of 100 lobsters in violation of General Statutes § 26-157a (a) (385 counts). The defendants were tried together in the Superior Court and, although each filed a separate appeal, their appeals have been combined. The defendants claim that the trial court erred (1) in failing to decide whether the statutes under which they were charged were constitutional, (2) in denying their motions for a continuance, (3) in denying their motions to suppress, (4) in admitting photographic evidence of the lobsters that had been sold and destroyed, (5) in allowing evidence of Loran readings that had not been previously disclosed by the state, (6) in denying their motions for judgments of acquittal at the close of the state's evidence, (7) in failing to give an adverse inference charge upon the state's failure to produce a certain map and witness, (8) in failing to instruct the jury properly as to the accessory liability of the defendant Diaz, and (9) in denying their motions for judgment of acquittal after the jury's verdict.

The jury reasonably could have found the following facts. On the evening of November 24, 1984, Thomas Ziobo, a state conservation officer with the department of environmental protection (DEP), received a complaint that trawlers were operated at night. After noting that two large trawlers were not in port, he, along with a fellow conservation officer, Robert Zabilanski, took a DEP patrol boat out onto Long Island Sound to investigate the complaint. The patrol boat was equipped with a Texas Instruments Model 9000 Loran receiver and a depth sounder. The officers set forth from Black Rock Harbor in Bridgeport. At first, they steered west to investigate an unrelated complaint of lobster poaching off Westport. From Westport, the DEP boat turned south and cruised towards the middle of Long Island Sound. Ziobo, at the helm, then

steered in an easterly direction toward Bridgeport and New Haven. The boat was running slowly, eastward along the 43,975 Loran line. This was in Connecticut waters, in midsound, north of the state line. The boat was stopped at intervals and the officers looked through binoculars for a trawler.

At about 11 p.m., Zabilanski sighted a small dim light to the north, deeper into Connecticut waters and between the patrol boat and the Connecticut shoreline. The patrol boat turned north and closed in on the source of the light. As they approached the light, the officers saw that it was carried aboard a commercial fishing trawler. The vessel was equipped with an otter trawl which was in operation. The trawler was proceeding slowly westward with boom and doors deployed and with its net cable out over the stern and under tension. From a distance of about forty to fifty yards away, Zabilanski took a depth reading while Ziobo took a Loran reading and plotted the position on a chart. Both readings indicated the trawler was operating in Connecticut waters. The patrol boat followed the trawler and observed it for about eight to ten minutes. Ziobo then took a second Loran reading which indicated that the trawler was still in Connecticut waters.

At this point, the patrol boat closed to within ten yards of the trawler. The officers hailed the vessel and informed the defendant Fraenza "that he was under arrest for trawling after legal hours." The trawler then altered its course southward and began steaming for New York waters. In response to the officers' hails, Fraenza called out that he had to turn into the wind in order to take in the net, although no effort was made at that time to haul in the net. After some minutes, the crew began to winch in the net, during the course of which they were seen to shake down the net, a procedure customarily used to bring lobsters down to the bottom of the net bag. Although the officers, prior to

boarding the trawler, had seen a bulge in the net, this bulge was no longer evident after they boarded the trawler. Except for some small fish the net was empty.

The officers ordered the trawler to proceed to Bridgeport harbor where, after docking, they counted 485 lobsters in the trawler's holding tanks. The defendants were arrested, tried to a jury and found guilty of violating General Statutes §§ 26-183 (b)[1] and 26-157a (a).[2]

The defendants first claim that the court denied them due process by failing to decide whether the statutes under which they were charged were constitutional.[3]

---

[1] General Statutes § 26-183 (b) provides: "No person shall operate an otter trawl in any of the waters of Long Island Sound lying west of a line drawn from the Stratford Shoal light to the easterly breakwater of the Housatonic River in Milford, from one hour after sunset to one hour before sunrise."

[2] General Statutes § 26-157a (a) provides: "Lobsters may be taken only by lobster pots, traps, trawls or similar devices or by skin diving, including the use of self-contained underwater breathing apparatus, or by hand. On and after June 13, 1984, and before July 1, 1985, there shall be a trip limit of one hundred lobsters on any vessel using an otter trawl, beam trawl or similar device on the waters of this state west of longitude seventy-three degrees. The transfer of any lobster from any vessel using an otter trawl, beam trawl or similar device to any other vessel on the waters of the state is prohibited. The possession on any vessel of an otter trawl, beam trawl or similar device capable of taking lobster shall be prima facie evidence of use of such otter trawl, beam trawl or similar device. The use of spears of any kind to take lobsters is prohibited. No person shall buy, sell, give away, expose for sale or possess any lobster less than three and three-sixteenths inches in length, measured by taking the length of the body shell parallel to the center line from the rear end of the eye socket to the rear end of such body shell, or any female lobster with ova or spawn attached or from which the ova or spawn has been removed."

[3] The defendants raised the constitutional issue in a motion to dismiss alleging in relevant part: "6. The statute is unconstitutional in that it discriminates against individual user groups." The trial court denied the motion. It is not clear from either the motion or the transcript whether the challenge was directed towards General Statutes § 26-157a or to General Statutes § 26-183, or both. Interestingly, the defendants have not argued on appeal that the statutes are in fact unconstitutional, but only that the trial court erred by not considering the issue.

The defendants assert that the trial court abrogated its duty to consider this issue when it stated that such constitutional issues are best decided by our Supreme Court. The defendants claim that they had a right to have the constitutional issue decided by the trial court under Practice Book § 815.

We find this claim to be without merit. While the defendants have a right to have constitutional questions addressed by the trial court under Practice Book § 815, this right was in no way violated in the present case. The trial court considered the constitutional question at a hearing prior to the close of trial and, after noting that it had worked with the statute throughout the trial, found that "the statute meets the constitutional requirements as far as this court is concerned." This conclusion was never made subject to a motion for articulation pursuant to Practice Book § 3082 (now § 4051),[4] which leaves us without a complete record against which we can determine whether the court had a basis for its conclusion. It is the appellants' burden to present us with a proper record; Practice Book § 3060D (now § 4061);[5] *Barnes* v. *Barnes*, 190 Conn. 491, 494, 460 A.2d 1302 (1983); and without such a record we have no basis to conclude that the trial court erred in its conclusion. We cannot conclude, therefore, that the defendants were denied due process by the trial court's treatment of the constitutional question.

In their second claim, the defendants contend that the court erred when, on the first day of the trial, it

---

[4] Since the defendants' briefs were filed prior to October 1, 1986, they are governed by the old rules of practice. We note, however, that Practice Book § 4051, effective October 1, 1986, is virtually identical to former Practice Book § 3082.

[5] Effective October 1, 1986, this requirement is contained in Practice Book § 4061. See footnote 4, supra.

denied their request for a continuance. The defendants had claimed a continuance was necessary because they had recently learned that one of their experts would not be able to testify. The defendants asserted that additional time was needed to procure a new expert to testify on the subjects of timing and trawler movements. The trial court denied the request, noting that the defendants would have a few days to procure a new expert.

The decision to grant or deny a continuance lies within the sound discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. *State* v. *Stanley,* 197 Conn. 309, 311–12, 497 A.2d 46 (1985); *State* v. *Marra,* 195 Conn. 421, 437, 489 A.2d 350 (1985); *State* v. *Myers,* 193 Conn. 457, 463, 479 A.2d 199 (1984). The defendants must show that the trial judge acted arbitrarily and substantially impaired the defendants' ability to defend themselves before we will conclude that the trial judge abused his discretion. *State* v. *Marra,* supra 437–38. *State* v. *Myers,* supra.

The defendants have failed to show that the trial court abused its discretion in this matter. The record discloses that the defendants had adequate time to secure a substitute expert witness if they thought it necessary. Not only did the defendants fail to do so, but they failed to establish that they were substantially prejudiced by the court's denial of a continuance. The record indicates that the defendants presented no fewer than three expert witnesses who testified in the general area in which the unavailable witness was prepared to testify, i.e., timing, location and fixation of positions with regard to trawler movements. Furthermore, the defendants never renewed their request for a continuance after the state completed its case-in-chief. We

cannot say under these circumstances that the trial judge erred in refusing to grant a continuance.

The defendants' third and fourth claims of error involve the admission of evidence with regard to the lobsters found aboard the trawler. After the trawler was brought to shore, the officers prepared to count the lobsters in the trawler's holding tank. The defendant Fraenza assured them, however, that they need not count the lobsters because he knew exactly how many they had, stating that there were 488 or 489 lobsters. The officers nonetheless counted the lobsters in the defendants' presence, counting 485. After counting the lobsters, the officers discarded the dead ones, sold the live ones, and froze ten for direct evidence. The officers took pictures of the lobsters before disposing of them. The defendants moved to suppress the admission of testimony regarding the disposal of lobsters and objected to the admission of the photographs of the lobsters. The trial court denied the motion to suppress and allowed the photographs into evidence.

We find that the trial court's actions were proper responses under the circumstances of this case. Here, the officers were confronted with perishable evidence and acted according to law when disposing of the lobsters. General Statutes § 26-126.[6] The court's action in admitting the evidence was a rational and reasonable response to the conditions inherent in cases of this nature. While the defendants claim that the disposal of the lobsters prevented them from verifying the number caught, the record indicates that the defendant Fraenza himself provided the officers with an accurate

[6] General Statutes § 26-126 provides: "Any fish or crustacean, or part thereof, illegally taken or possessed shall be seized by the commissioner, any authorized employee of the department or any conservation officer, and the commissioner may, at his discretion, sell or otherwise dispose of the same. The proceeds of any such sale shall be paid to the state treasurer and applied by him to the general fund."

estimate and that the lobsters were counted in the defendants' presence. In addition, there was no showing that the state's disposal of the lobsters was made in bad faith or resulted in any prejudice to the defendants. See *State* v. *Hamele,* 188 Conn. 372, 379–82, 449 A.2d 1020 (1982); *United States* v. *Young,* 535 F.2d 484, 488 (9th Cir. 1976); see also *California* v. *Trombetta,* 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984); *State* v. *Dow,* 392 A.2d 532 (Me. 1978). Furthermore, the photographs were offered merely to depict the lobsters taken rather than to establish a particular quantity, and could have served as a demonstrative aid to the jury. See *State* v. *DeForge,* 194 Conn. 392, 397, 480 A.2d 547 (1984).

The defendant's fifth claim is that the trial court erred by allowing the state to introduce testimony of Loran readings that had not previously been disclosed by the state. Prior to trial, the defendant had made a discovery request for all Loran data from the state patrol boat in connection with this matter. The state failed to disclose this data until trial since the data was not discovered until the night before the trial.[7] The state had, however, disclosed a map plotting locations corresponding to that revealed by the Loran numbers. The trial court, after a colloquy with counsel outside the presence of the jury, elected to allow the Loran testimony into evidence.

We find no error in the admission of this testimony. The Loran coordinates were not exculpatory and therefore were not discoverable as a matter of right. *State*

---

[7] The DEP officers kept no formal Loran records or logs, although Officer Ziobo had written down the coordinates on a calendar. The prosecutor learned of the existence of the calendar notes the night before the trial and promptly notified the defense the next day, the same day he sought to introduce the information.

v. *Green,* 194 Conn. 258, 263, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). Rather, because the readings placed the trawler in Connecticut waters, they were inculpatory, and as such the defendants had no constitutional right to their discovery. *State* v. *Perez,* 181 Conn. 299, 308, 435 A.2d 334 (1980); *Weatherford* v. *Bursey,* 429 U.S. 545, 599, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977). Since there is no constitutional right of discovery involved, disclosure is regulated by the rules of the court. Practice Book §§ 741 et seq. The trial court has broad discretion in applying sanctions for failure to comply with discovery orders. *State* v. *Festo,* 181 Conn. 254, 264, 435 A.2d 38 (1980). Practice Book § 747[8] recognizes this discretion in setting forth appropriate sanctions. Here, the trial court noted that no substantial prejudice could have inhered to the defendants since the state had previously provided the defendants with a chart with the relevant positions plotted thereon. In addition, defense counsel made no request for any of the less drastic sanctions available under Practice Book § 747. We find no abuse of the trial court's discretion in not excluding the actual Loran numbers from the jury's consideration.

The defendants' sixth claim, that the court erred in denying the defendants' motion for judgment of acquittal after the close of the state's case, and their ninth claim, that the court erred in denying their motion for judgment of acquittal after the jury's verdicts, are also

---

[8] Practice Book § 747 provides: "If the prosecuting authority fails to comply with Sec. 740, the judicial authority may, on motion of the defendant or on his own motion, grant appropriate relief, which may include one or more of the following:

"(1) Requiring the prosecuting authority to comply;

"(2) Granting the defendant additional time or a continuance;

"(3) Relieving the defendant from making a disclosure required by Sec. 756, prohibiting the prosecuting authority from introducing specified evidence, or dismissing the charges; or

(4) Entering such other order as he deems proper."

without merit. The defendants claim that the court should have granted these motions because there was insufficient evidence from which the jury could conclude that the defendants had violated the statutes. Under the waiver rule, we are not obligated to consider the first of these claims. *State* v. *Simino,* 200 Conn. 113, 118, 509 A.2d 1039 (1986). We therefore decline to review it. When addressing the second of these claims we must determine whether, after viewing the evidence in the light most favorable to the prosecution and in support of the jury's verdict, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State* v. *Harris,* 198 Conn. 158, 161, 502 A.2d 880 (1985); *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983). In finding guilt beyond a reasonable doubt, the jury is free to draw reasonable, logical inferences from facts proven. *State* v. *Harris,* supra. *State* v. *Morrill,* 193 Conn. 602, 608, 478 A.2d 994 (1984). Here, there was conflicting testimony with regard to the allegations of the state which the jury by its verdict resolved in favor of the state. The resolution of conflicting testimony is the province of the jury. *State* v. *Amarillo,* 198 Conn. 285, 289, 503 A.2d 146 (1986); *State* v. *Martin,* 189 Conn. 1, 9, 454 A.2d 256 (1983). We find no error in the court's denial of the defendants' motions for judgment of acquittal.

The defendants' eighth claim is that the trial judge erred in refusing to give an adverse inference charge concerning the state's failure to produce a navigational chart and in its failure to produce a co-arrestee as a witness. The law is clear that an adverse inference charge is only proper when a party fails to produce a witness who is within his power to produce and would naturally have been produced by him. *State* v. *Amarillo,* supra, 306; *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960). The co-arrestee, Todd Bragdon, was a crewman aboard the trawler and was

also issued a summons. Although he may have been able to provide incriminating evidence against the defendants, he would likely have incriminated himself if he had done so. Thus, Bragdon would not be a witness whom the state would naturally produce. Likewise, the state's failure to produce the chart was not cause for an adverse inference charge. The state did attempt to offer the chart into evidence but it was excluded by the court as cumulative after objection by the defendants. The court, therefore, did not err in refusing a *Secondino* charge.

Finally, the defendant Diaz, avers error in the court's charge on accessory liability as it related to him. The defendant asserts that the charge allowed the jury to convict him on the basis of his "mere presence" aboard the trawler. Our review of the entire charge fails to sustain this contention. The court recited General Statutes § 53a-8 to the jury, which, by its terms clearly precludes conviction for "mere presence."[9] In addition, the court correctly charged the jury that "the defendants are to be considered on trial separately even though some of the facts are similar for each of the defendants." The court further stated that "one of these defendants may be found guilty and the other one may be found not guilty . . ." and, further, that each defendant was to be viewed "as if he were on trial alone." See *State* v. *Theriault*, 182 Conn. 366, 438 A.2d 432 (1980); *State* v. *Williams*, 182 Conn. 262, 438 A.2d 80 (1980). We find no error in the court's instructions on accessory liability.

There is no error.

In this opinion the other judges concurred.

---

[9] General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."