## STATE OF CONNECTICUT *v.* BRIAN ATHERTON (4408)

DUPONT, C. J., HULL and SPALLONE, Js.

Submitted on briefs October 8—decision released December 23, 1986

*Catherine A. Rivard* filed a brief for the appellant (defendant).

*Walter D. Flanagan,* state's attorney, and *Christopher Malany,* deputy assistant state's attorney, filed a brief for the appellee (state).

HULL, J. After a trial to a jury, the defendant was convicted of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a). The defendant appeals from the judgment rendered thereafter, claiming the following: (1) that the trial court erred in admitting into evidence the victim's out-of-court identification of the defendant; (2) that he was deprived of the effective assistance of counsel; (3) that the trial court erred in denying his motion for mistrial grounded on the disclosure at trial of the existence of two taped, pre-arrest interviews of the defendant by police; and (4) that the trial court abused its discretion in allowing direct examination of the victim regarding her prior sexual experience. We find no error.

The jury could reasonably have found the following facts. On the evening of November 30, 1983, the victim and several friends, all living in a college dormitory, decided to go dancing at a local discotheque. The group walked there together, arriving about 10:40 p.m. Sometime between 1:15 a.m. and 1:30 a.m, because her friends did not wish to leave, the victim decided to walk back to the dormitory alone. A young man, whom the victim subsequently identified as the defendant, walked up behind her and began to talk to her. After walking with her for one or two minutes, the defendant locked his left arm around the victim's neck, and drew her to him. When she protested, he threatened to kill

her if she made any noise. The defendant dragged the victim into a parking lot and sexually assaulted her. Afterward, he dragged her some distance to a railway embankment, and sexually assaulted her again. The victim then lied and told the defendant that she had cancer and that having sex increased her likelihood of dying. Upon hearing this, the defendant fled. The victim got partially dressed and ran back to her dormitory. She described her assailant to the dormitory resident director, who called the state police. She described him as having dirty blonde hair and acne, and said that he had worn a dungaree jacket.

On December 1, 1983, a state police detective was assigned to investigate the case. Police officers told the detective that the defendant resembled the victim's description of her assailant. The detective assembled a photographic array of black and white photographs containing one of the defendant. The detective testified at trial that he considered the photograph of the defendant to be a poor likeness of him as he appeared in December, 1983.

The detective met with the victim on December 8, 1983. At that time, the victim was unable to make an identification of her assailant from the photo array. The detective then contacted the defendant and obtained his permission to take a color photograph. Another photo array was compiled, comprised of all color photographs. On December 15, 1983, the victim identified the photograph of the defendant as that of her assailant.

Prior to trial, the defendant moved to suppress the evidence of the color photographic array on the grounds that it was not reliable and that the defendant's due process rights and right to counsel had been violated. That motion was denied without written opinion.

At trial, the state told defense counsel and the court that it had just received two audio tapes of interviews

between the defendant and police, conducted prior to the defendant's arrest. Defense counsel stated that he would object to the offer of such evidence. The defendant twice moved for a mistrial on the ground that the evidence of the tapes was prejudicial to his case. Those motions were denied. The tapes, however, were never offered into evidence.

During the state's direct examination of the victim, the court allowed it to question the victim regarding her sexual experience prior to the assault. As a result, the fact that the victim was a virgin prior to the assault was revealed to the jury. The defendant objected to the question on relevancy grounds, and his objection was overruled.

I

The defendant's first claim of error is that the trial court denied him due process by admitting into evidence the victim's out-of-court identification of the defendant. The defendant claims that the "array consisted of what appears to be subjects younger than the defendant. Their physique appears to vary—their jaw lines and facial features are not prominent. The length of the hair on the other subjects is shorter than the defendant's. Hair color, particularly of one subject, is much lighter than the rest. Most importantly, the defendant's photograph stood out." He cites *State* v. *Carter,* 198 Conn. 386, 503 A.2d 576 (1986), and *State* v. *Fullwood,* 193 Conn. 238, 476 A.2d 550 (1984), for the proposition that the introduction into evidence of the impermissibly suggestive and unreliable array violated his constitutional rights. He claims, therefore, that the introduction of this evidence amounts to reversible error.

"Our courts have repeatedly held that a defendant who attempts to suppress identification evidence has the burden of proving that the identification resulted from an unconstitutional procedure. See *State* v.

*Aversa,* 197 Conn. 685, 693, 501 A.2d 370 (1985); *State* v. *Fullwood,* 193 Conn. 238, 244, 476 A.2d 550 (1984); *State* v. *McKnight,* 191 Conn. 564, 570, 469 A.2d 397 (1983); *State* v. *Anderson,* 6 Conn. App. 15, 21 n.4, 502 A.2d 446 (1986). In order to determine whether the identification procedures violated the defendant's due process rights, a case by case inquiry must be made as to (1) whether the identification procedures were unnecessarily suggestive, and, if so, (2) whether the identification was nevertheless reliable based upon an examination of the totality of the circumstances. See *State* v. *Findlay,* 198 Conn. 328, 336–37, 502 A.2d 921 (1986); *State* v. *Amarillo,* 198 Conn. 285, 291, 503 A.2d 146 (1986); *State* v. *Perez,* 198 Conn. 68, 73, 502 A.2d 368 (1985)." *State* v. *Frazier,* 7 Conn. App. 27, 34, 507 A.2d 509 (1986).

The totality of the surrounding circumstances must be examined to determine whether a defendant has established that the proceeding was impermissibly suggestive. *State* v. *Kinsey,* 173 Conn. 344, 346, 377 A.2d 1095 (1977); see also *State* v. *Maturo,* 188 Conn. 591, 452 A.2d 642 (1982).

The defendant did not move the court under Practice Book § 3082 to articulate the factual and legal bases for its decision denying the defendant's motion to suppress. It is the appellant's responsibility to secure an adequate record on appeal. *State* v. *Fraenza,* 9 Conn. App. 228, 233, 518 A.2d 649 (1986). We therefore consider the claim of an impermissibly suggestive photographic identification on the record before this court. We have examined the state's exhibit A, which is the color photographic array from which the victim identified the defendant. It shows seven caucasian males, all with relatively long hair and all dressed informally. All appear to be approximately the same age. The physiognomy of the seven persons photographed is remarkably similar.

The defendant's photograph is slightly smaller than the other six, and appears to have been taken from a slightly greater distance. "[S]uch differences in and of themselves do not render an array of photographs unnecessarily suggestive. *State* v. *Davis,* 175 Conn. 250, 254, 397 A.2d 1347 (1978); see *State* v. *Hafner,* [168 Conn. 230, 238, 362 A.2d 925, cert. denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74 (1975)]." *State* v. *McKnight,* supra, 571. There is no evidence that the photograph portrayed the defendant as "one giant among a group of Lilliputians . . . ." *State* v. *Maturo,* supra, 596. We conclude that the defendant has failed to prove that the photographic array was impermissibly suggestive.

Even if we assume that it was impermissibly suggestive, the identification was sufficiently reliable based upon the totality of the circumstances. See *State* v. *Parker,* 197 Conn. 595, 599, 500 A.2d 551 (1985); *State* v. *Frazier,* supra, 35.

In *Manson* v. *Brathwaite,* 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977), the court set forth the factors to be considered in determining whether an identification is sufficiently reliable. These include the opportunity of the victim to view the criminal, the degree of attention of the victim, the accuracy of the victim's prior description, the level of certainty of the identification, and the time lapse between the crime and the identification. Id., 114–16; see also *State* v. *Mitchell,* 7 Conn. App. 46, 507 A.2d 1017 (1986).

In the present case, the victim was able to observe the defendant for "about a minute and a half." The defendant walked very close to the victim, and the sidewalk on which they were walking was lit by street lamps. The prior description was clearly accurate, because the police identified the defendant from her verbal description alone. Only two weeks had passed

between the date of the crime and that of the identification. The victim was reasonably certain about her identification. In view of all these factors probative of reliability, we conclude that the trial court was correct in refusing to suppress the identification evidence in this case.

## II

The defendant's next claim of error is that he was deprived of adequate assistance of counsel in that his attorney failed to attack properly the photographic array as suggestive.

We will not review this claim. Our courts have emphasized that " 'a claim of ineffective assistance of counsel is more properly pursued on a petition for new trial or on a petition for a writ of habeas corpus rather than on direct appeal.' *State* v. *Mason,* 186 Conn. 574, 578–79, 442 A.2d 1335 (1982); *State* v. *Just,* 185 Conn. 339, 370–71, 441 A.2d 98 (1981)." *State* v. *Leecan,* 198 Conn. 517, 541, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); see also *State* v. *Elliott,* 8 Conn. App. 566, 513 A.2d 1285 (1986).

## III

The defendant next claims that the trial court erred in denying his motion for a mistrial. The motion was based on claims of undue and prejudicial surprise in the disclosure at trial of the existence of two tape recordings. We conclude that the court did not err in denying that motion.

"At the outset, we note that the ultimate question on a motion for mistrial is whether some 'conduct inside or outside the courtroom . . . result[ed] in substantial and irreparable prejudice to the defendant's case.' Practice Book § 887. A mistrial is warranted 'only where it is apparent to the court that as a result of some occurrence during trial a party has been deprived of

the opportunity for a fair trial.' *State* v. *Ubaldi,* 190
Conn. 559, 562, 462 A.2d 1001, cert. denied, 464 U.S.
916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983); *State* v.
*Jackson,* 3 Conn. App. 132, 136, 485 A.2d 934 (1985).
A motion for mistrial is directed to the trial court's
'broad discretion.' *State* v. *DeMatteo,* 186 Conn. 696,
704, 443 A.2d 915 (1982). . . . Our inquiry, therefore,
is limited to determining whether under these circum-
stances the trial court abused its discretion in refus-
ing to grant . . . the defendant's motion for mistrial."
*State* v. *Jennings,* 5 Conn. App. 500, 505, 500 A.2d 571
(1985).

In the present case, the state claims that it did not
have access to or knowledge of the tapes until a few
days before trial. We do not countenance the failure
to disclose evidence when an "open file" discovery
policy is relied upon by a defendant, as it was in this
case. We find, however, that even if the state had the
opportunity to make the tapes available to the defend-
ant at an earlier date, there was no error in denying
the motion for mistrial. There is no information in the
record as to the content of the recordings, nor were
the tapes used by either side. The defendant's counsel
did have the opportunity to review the tapes, but no
further continuance was sought by the defendant after
the initial review. In light of the fact that the defend-
ant failed to provide any evidence upon which a show-
ing of prejudice could be found, we find no irreparable
prejudice and we conclude that the trial court did not
abuse its discretion in denying the defendant's motion
for a mistrial.

IV

The defendant's final claim of error is that the trial
court abused its discretion by admitting evidence of the
victim's lack of prior sexual experience. The defend-
ant maintains that the questioning of the victim by the

state led to the characterization of her as a "wholesome virgin," which was prejudicial and immaterial to the elements of the crime.

The state submits that the fact the victim had not had prior sexual relations was relevant because the victim's sexual inexperience helped to explain any vagueness or uncertainty in her description of the sexual assaults involved in this case.

The admission of evidence of acts of sexual conduct, the prejudicial effect of which outweighs probative value, is inconsistent with the public policy of Connecticut. See *State* v. *Sharpe,* 195 Conn. 651, 659–60, 491 A.2d 345 (1985); *State* v. *Mastropetre,* 175 Conn. 512, 517, 400 A.2d 276 (1978). We conclude that the remote relevance claimed by the state is outweighed by the inherent prejudice of it. The jury's sympathy for the victim could only be enhanced by the testimony. It was error to allow the introduction of evidence of her lack of prior sexual experience. The defendant, however, presented an alibi defense. Neither the vagueness of the victim's description of the assault nor her prior sexual relations could have had an effect on the alibi defense. In the context of the overwhelming evidence of repeated sexual assaults, we conclude that this one erroneous ruling on evidence was not sufficiently prejudicial to render it likely to affect the outcome of the case. See *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980).

There is no error.

In this opinion the other judges concurred.