STATE OF CONNECTICUT *v.* JOHN A. GRAHAM
(5628)

BORDEN, BIELUCH and O'CONNELL, Js.

Argued November 13, 1987—decision released March 1, 1988

*Chester Fairlee,* for the appellant (defendant).

*John F. Cocheo,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti, Sr.,* state's attorney, for the appellee (state).

BIELUCH, J. The defendant appeals from the judgment of conviction, after a jury trial, of burglary in the first degree in violation of General Statutes §§ 53a-101 (a) (1) and 53a-8, robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), larceny in the second degree in violation of General Statutes § 53a-123 (a) (2), and four counts of unlawful restraint in the first degree in violation of General Statutes §§ 53a-95 and 53a-8.

The defendant claims that the trial court erred (1) in admitting into evidence an eyewitness' in-court identification of him, (2) in denying his pretrial motion in limine to bar the prosecution's use of the testimony of a witness who admitted that she had previously committed perjury, and (3) in allowing this witness to testify that she had previously given false testimony because she had been threatened, although the defendant was not connected to these threats. We find no error.

The jury could reasonably have found the following facts. On February 5, 1983, two masked men robbed the Medi Mart pharmacy on the Boston Post Road in Waterford. The two men were armed and stole cash and store merchandise, including almost one hundred wristwatches. The defendant and another man, Willie Thompson, were later arrested and charged with various crimes in connection with the robbery.[1]

The case against the defendant consisted of the seven charges of which he was convicted and addressed whether the defendant was the second armed robber.[2] The evidence at trial included the testimony of the state's witness Tamara Vaill, an eyewitness to the robbery. Vaill testified as to her recollection of the incident including a description of the physical characteristics of the robbers. During the testimony of this witness, the state requested that the trial court order the defendant "to leave that defense table and to walk

---

[1] Thompson was subsequently convicted of having been one of the armed robbers in this holdup.

[2] The defendant was previously tried and convicted of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), burglary in the first degree in violation of General Statutes §§ 53a-101 (a) (1) and 53a-8, larceny in the second degree in violation of General Statutes § 53a-123 (a) (2), and unlawful restraint in the first degree in violation of General Statutes §§ 53a-95 and 53a-8. On appeal, the defendant's convictions were reversed because of evidentiary errors which occurred at trial. See State v. Graham, 200 Conn. 9, 509 A.2d 493 (1986). This appeal addresses issues which arose from the defendant's second trial.

forward'' towards the witness ''to give the witness a chance to view him, a nontestimonial view.'' Following the defendant's objection, the state informed the court that the purpose of this request was to permit the witness to determine if the defendant's height and body structure were consistent with the height and body structure of one of the robbers. Over the defendant's objection, the court ordered the defendant to stand at his counsel's table.

The state also called Dinah McNair, Willie Thompson's niece, as a witness. McNair had given a signed statement to the police after the 1983 robbery indicating that she had overheard the defendant and her uncle plan this and other robberies. When called to testify at the defendant's first trial, McNair had denied ever having heard the defendant and Thompson plan the robbery of the Medi Mart pharmacy in Waterford.[3] At this retrial, McNair testified that she had in fact overheard a conversation between the defendant and her uncle, Willie Thompson, regarding a plan to rob the Medi Mart pharmacy in Waterford. McNair testified that the reason she had testified in 1983 inconsistently with her testimony at this trial was that she had been threatened with physical violence just before she testified in the first trial. The court allowed this evidence only for evaluation of the witness' credibility over the objection of the defendant, but warned the jury in these words: ''I want to caution you that first of all, there is absolutely no evidence whatsoever that this defendant, Mr. Graham, was in any way involved with any

---

[3] At the defendant's first trial, the court declared McNair ''hostile'' and permitted the state to impeach her testimony with the prior inconsistent statement concerning the Medi Mart robbery. The state then was also permitted to inquire as to the other robberies mentioned by McNair in her statement to the police. Our Supreme Court found that the trial court erred in allowing the state to elicit testimony as to the defendant's involvement in other robberies. See *State* v. *Graham*, 200 Conn. 9, 14, 509 A.2d 493 (1986).

such threats. . . . I allowed that evidence strictly so that you could evaluate that along with any other evidence that you might think appropriate in considering the—what weight you would give to this witness' testimony."

The defendant was convicted as charged. This appeal followed after sentencing.

I

The defendant's first claim is that the trial court erroneously allowed an unnecessarily suggestive and unreliable in-court identification procedure when it ordered the defendant to stand at counsel table so that the witness, Tamara Vaill, could determine if his height and body structure were consistent with her previous description of the height and body structure of one of the robbers. The defendant argues that the in-court identification should not have been allowed because it was the product of a suggestive out-of-court conversation between the witness and police detectives and also because there was an insufficient foundation to show the reliability of the identification. In addition, the defendant maintains that the identification should have been excluded because its probative value was low and its prejudicial impact was high. Because we conclude that the procedure at trial was not for the purpose of identification, and because, even if it were, the identification procedure was not tainted by any impermissible out-of-court procedure and was neither unnecessarily suggestive nor unreliable, the defendant cannot prevail on this claim.

Our review of the record reveals that the trial court carefully considered the state's request, and ordered the defendant to stand at counsel table only after the court was certain that the sole purpose of the state's request was to enable the witness, who had earlier in her testimony described the robbers' physical charac-

teristics, to compare the defendant's body structure and height with her previous description of one of the robbers. The court excused the jury as soon as the state made its request and proceeded to question the state as to the precise nature and purpose of its request. The court noted that the witness had already described the physical characteristics of the robbers and granted the state's request over the defendant's objection, saying "I think that this is something that the jury has to evaluate. I see no great difference between someone identifying the [defendant] by . . . facial characteristics when he is the only person sitting at counsel table. That is done all the time, and the jury, of course, takes that into consideration."

Before the jury returned, the court once again made sure that the witness was not going to be asked to describe the robber based on her in-court observation of the defendant. The court also asked that the state lay more of a foundation "by asking [the witness] if she recalls those [physical characteristics] and whether she could identify an individual by those characteristics or identify those characteristics in an individual at this time." The court made clear that this foundation must be laid to permit the requested procedure: "If she cannot, of course that takes care of it." The court went on to explain its reasons for permitting the procedure upon a proper foundation by stating "[s]he is not going to—it is my understanding, she is not going to say Mr. Graham is the individual. She cannot. This is—she is simply going to either conclude—her testimony is simply whether or not his certain characteristics are consistent with the individual who conducted the robbery." The state thereupon commenced its voir dire examination of the witness regarding her recollection of the height and body structure of the two individuals who robbed the Medi Mart pharmacy.

The court also conducted a voir dire of the witness, asking her whether she "could identify a—those physical characteristics, height and body build and—in this individual, just to the extent as to whether a person fell into that category or not." The witness replied that she could and also, in response to further questioning by the court, that she was basing her description only upon her recollection of what had occurred at the time of the robbery. The court then concluded that "the witness has demonstrated that she is capable of making or not making this identification. Not—it really is not an identification, simply testimony as to whether or not this defendant fits into the category along with maybe a million other people." In response to the defendant's objection that the probative value of the evidence was low and its prejudicial impact was high, the court stated that the evidence was not prejudicial and that its probative value was "probably in the category of not better than something like blood exclusion tests, for example. . . . I think it is circumstantial evidence. It would not be enough to, by itself, to warrant a conviction. It is not an identification."

With the jury still out of the courtroom, the state amended its request and asked that the defendant only be required to stand at counsel table while the witness approached him for a full view. The court accepted this change, but suggested a trial run of the procedure. The defendant was ordered to stand at counsel table and the witness was allowed to stand approximately six feet away to make her observation. Once again, the court noted on the record that the procedure was merely for the stated purpose of ascertaining whether the defendant's height and body structure were consistent with those of either of the two men who robbed the Medi Mart pharmacy on February 5, 1983.

After the jury returned to the courtroom, the defendant was asked to stand and the witness came down

and stood approximately six feet away, looking at the defendant's height and body size. The state asked if the defendant's height and body size were similar to those of either of the two robbers. The witness responded that the defendant's height and size were consistent with the height and body size of the shorter of the two men who robbed the pharmacy. At no time during this procedure did the witness identify the defendant as one of the robbers based on her in-court observation of his physical characteristics.

Even if we assume, arguendo, that this was an identification procedure, this procedure had no greater tendency to suggestiveness than an identification of an accused seated at counsel table. "Any one-on-one in-court identification of an accused conveys the message that the state has arrested and placed on trial a person it believes has committed the crime. *Baker* v. *Hocker,* 496 F.2d 615, 617 (9th Cir. 1974). That is the factor that creates the element of suggestiveness, not the extra steps taken here to allow the victim to observe the defendant thoroughly before identifying him." *State* v. *Smith,* 200 Conn. 465, 468–69, 512 A.2d 189 (1986).

In *State* v. *Smith,* supra, our Supreme Court upheld the conviction of a defendant whose identity was confirmed at trial after he was ordered to walk to the area of the witness stand and to recite his name, address and the alphabet. The defendant in *Smith* conceded that he could be required to stand to be identified, but argued that the order that he approach the victim and speak was unnecessarily suggestive and conducive to misidentification. The court, noting the absence of any unnecessarily suggestive out-of-court pretrial identification procedure, upheld the discretion of the trial court to permit the in-court procedure.

The defendant in our case argues that an unnecessarily suggestive out-of-court identification procedure

occurred by claiming that police detectives told the witness before trial that the defendant was one of the men who had committed the robbery. The defendant argues that this suggestive comment occasioned or led to the witness' testimony as to the height and body structure of the defendant.

We find no evidence that any comments made by the police to the witness influenced her description of the robbers. Our review of the transcript convinces us that the witness' description was the result of her observations on the day of the robbery, and not of any comments made to her by the police.

" 'The [United States] Supreme Court has not extended its exclusionary rule to in-court identification procedures that are suggestive because of the trial setting.' *United States* v. *Domina,* [784 F.2d 1361, 1369 (9th Cir. 1986)]. 'There is no constitutional requirement that an in-court identification confrontation be conducted as a lineup or be otherwise free of suggestion. An in-court testimonial identification must be excluded if it is the product of an out-of-court confrontation arranged by the state, which was unnecessarily suggestive and conducive to irreparable misidentification.' *Commonwealth* v. *Wheeler,* 3 Mass. App. 387, 391, 331 N.E.2d 815 (1975). '[W]ithout more, the mere exposure of the accused to a witness in the suggestive setting of a criminal trial does not amount to the sort of impermissible confrontation with which the due process clause is concerned.' " *State* v. *Smith,* supra, 469–70; *State* v. *Cubano,* 9 Conn. App. 548, 554–55, 520 A.2d 250 (1987).

" 'The general rule regarding in-court identification of a defendant where there has been no pretrial identification is that it is admissible within the discretion of the trial court, with the weight of the identification to be determined by the jury.' " *State* v. *Elliott,* 8 Conn. App. 566, 571, 513 A.2d 1285, cert. denied, 201 Conn.

813, 517 A.2d 630 (1986), quoting *State* v. *Frazier,* 7 Conn. App. 27, 37, 507 A.2d 509 (1986). "The defendant's protection against the obvious suggestiveness in any courtroom identification confrontation is his right to cross-examination. . . . The innate weakness in any in-court testimonial identification is grounds for assailing its weight rather than its admissibility." (Citations omitted.) *State* v. *Smith,* supra, 470.

The manner in which a trial court conducts an in-court identification procedure rests within that court's sound discretion. Id. In *Smith,* our Supreme Court concluded that the trial court did not abuse its discretion or violate the defendant's due process rights in granting the state's request that the defendant approach the witness and speak in order to confirm her previous identification of him. In our case, the defendant was merely asked to stand silently at counsel table in order for the witness to ascertain whether his body structure and height were consistent with those of either of the two men who had committed the robbery in question. The witness at no time, either before trial or at trial, specifically identified the defendant as one of the robbers. Even if the procedure employed in this case is considered as an identification procedure, the trial court did not err in permitting the procedure to occur.

## II

The defendant next claims that the trial court erred by refusing to grant his pretrial motion in limine to bar the prosecution's use of the testimony of Dinah McNair, a witness who admitted that she had falsely testified at the defendant's first trial that she had not overheard the defendant and her uncle, Willie Thompson, plan the robbery in question, when in fact she had previously given a written statement to the police stating otherwise.

McNair testified at trial that her original written statement to the police after the robbery was an accurate and true statement regarding the conversation she overheard between the defendant and Thompson regarding their plan to rob the Medi Mart pharmacy in Waterford. The witness also testified that the reason she had lied at the defendant's previous trial was because she had been threatened with physical violence prior to her testimony.

The court did not err in denying the pretrial motion and in admitting this testimony. The record discloses that the defendant exercised his right and opportunity to cross-examine the witness. The fact of McNair's previous perjury, and her reason for lying in court at the first trial, were clearly set out before the jury. The jury, in the proper exercise of its function, had the opportunity to judge the credibility of the witness and the weight of her testimony. "The jury, as the trier of fact, determines the credibility of witnesses, and it is not the province of this court to retry the facts or to determine the weight which should have been accorded witnesses' testimony." *State* v. *Findlay,* 198 Conn. 328, 334, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986). "It is within the province of the jury to determine the credibility and the effect to be given the evidence." *State* v. *Nicoletti,* 8 Conn. App. 351, 354, 512 A.2d 235 (1986).

### III

The defendant also claims that the court erred in allowing McNair to testify that she had perjured herself in the defendant's first trial because she had been threatened with physical violence prior to that testimony. The defendant objected to the admission of this testimony because, as the jury was later told by the trial court, the defendant was not connected to these threats.

Evidence of threats made against a witness in a criminal prosecution is generally admissible when such threats were made with the defendant's knowledge, consent, or authorization. This type of evidence is admissible either on the theory that such conduct is inconsistent with the defendant's claim of innocence or on the theory that the conduct exhibits a consciousness of guilt. *State* v. *Leecan,* 198 Conn. 517, 534, 504 A.2d 480, cert. denied, 1176 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); *State* v. *Sorbo,* 174 Conn. 253, 256, 386 A.2d 221 (1978); *State* v. *Waterman,* 7 Conn. App. 326, 351, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986). Where, however, as in our case, there is no evidence to connect the defendant with the threats, evidence of such threats is not admissible against him. *State* v. *Sorbo,* supra; *State* v. *Waterman,* supra.

In this case, however, the trial court did not err in allowing the witness to testify that she was threatened prior to her testimony in the defendant's first trial because such evidence was admitted for the limited purpose of determining her credibility, and not as probative of the defendant's guilt. The court was careful to caution the jury that there was no evidence that the defendant was in any way involved in those threats. The court also instructed the jury that the testimony of the witness was allowed "strictly so that you could evaluate that along with any other evidence that you might think appropriate in considering the—what weight you would give to this witness' testimony."[4] These specific

---

[4] The court's complete instruction to the jury was as follows: "I just want to caution you about that. The witness has testified that she was threatened. I want to caution you that first of all, there is absolutely no evidence whatsoever that this defendant, Mr. Graham, was in any way involved with any such threats. And you should not consider in any way that he was, because there is—it is absolutely nothing along those lines. I allowed that evidence strictly so that you could evaluate that along with any other evi-

instructions were more than adequate to prevent the jury from connecting the defendant to the alleged threats made against the witness and from using against the defendant the evidence of those threats.

There is no error.

In this opinion the other judges concurred.

dence that you might think appropriate in considering the—what weight you would give to this witness' testimony.

"In other words, there is nothing at all to indicate that Mr. Graham was in any way involved in those threats. And so you cannot—anyway, there is no way that you can attach liability on that to him. But you can consider that in giving—considering the weight that you would afford this witness' testimony."